ROBERT LITTLEJOHN, PLAINTIFF IN ERROR, V. A. L. PEARSON, DEFENDANT IN ERROR.

ROBERT LITTLEJOHN, PLAINTIFF IN ERROR, V. J. H. WHITNEY AND W. H. STOCKTON, DEFENDANTS IN ERROR.

Chattel Mortgage: SALE BY MORTGAGOR: WAIVER BY MORT-GAGEE. In an action of replevin where the plaintiff claimed possession of certain mares under a chattel mortgage dated January 10, 18-3, given to secure the sum of $212.75, due December 1st of that year, on which had been paid a sum exceeding $90,

there was testimony tending to show that in February, 1884, the mortgagor had sold the mortgaged property as his own at public vendue, to parties who knew of the existence of the mortgage; that prior to the execution of a note, one of the purchasers inquired of the mortgagee as to the right of the mortgagor to sell, and he said, " I guess it is all right. I gave Henry leave to sell her, provided he gave a mortgage on a team as good as the one I sold him." The purchaser thereupon executed a note to the mortgagor for the purchase price of the mare, and soon afterwards the mortgagor executed to the plaintiff a mortgage upon another span of horses, which facts in relation to the waiver of the first mortgage, and the taking of the second, were denied by the plaintiff. *Held,* That a clear preponderance of the testimony established such waiver, and that the plaintiff was not entitled to recover.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*R. W. Sabin,* for plaintiff in error, cited: Jones' Chat. Mort., Sec. 661. *Whitney v. Heywood,* 6 Cush., 82. *Hale v. Morgan,* 68 Ill., 244. *Shuler v. Bautwell,* 18 Hun., 171. *Gregory v. Thomas,* 20 Wend., 17. *Hill v. Beebe,* 13 N. Y., 556.

*Pemberton & Bush* and *Hazlett & Bates,* for defendants in error.

MAXWELL, J.

Two actions of replevin were brought by the plaintiff, one against A. L. Pearson, to recover the possession of " One sorrel mare, weight about 1,000 pounds, now six years old," and the second against J. H. Whitney and W. H. Stockton, to recover the possession of " One sorrel mare six years old, weight about 1,050 pounds, with small blazed face." The cases were tried together, and a verdict in each case rendered for the defendant, and a motion for a new trial in each case having been overruled, judgments were rendered upon the verdicts.

13

A number of errors are assigned in this court, the principal one being that the verdicts are not sustained by the evidence. The cases depend upon the same facts and will be considered together.

The testimony shows that on the 10th day of January, 1883, one Henry Harbison, purchased the property in question from the plaintiff, for the sum of $212.75, payable on or before December first thereafter, with interest at 10 per cent from date until paid; that to secure the payment of said debt Harbison executed a chattel mortgage on the property in question to the plaintiff, which mortgage was duly filed for record. February 23, 1883, Harbison paid to the plaintiff on said mortgage $5.55, and December 19, 1883, paid $84. At the time the mortgage was executed Harbison lived on the plaintiff's land, in Gage county. In February, 1884, there was a public sale of property at Filley, in Gage county, and at the close of the sale the property in controversy was offered at public vendue, as belonging to Harbison, and the animal first described sold to one Wilber Billings for the sum of $105, and the animal last described sold to one Snyder. David Littlejohn, a brother of the plaintiff, and afterwards his agent, was present at the sale. Billings did not pay for the property at the time. He testifies that: "I came by and got the mare and told Henry I would fix up a note with him in a few days; I knew that Robert Littlejohn had a mortgage on the mares, and didn't want to fix up the note until I knew it was fixed up with Robert, and Harbison said he——. In a few days afterwards Robert was at my house, before I gave a note, and I was speaking of the mare; she was in the stable at my house, and we went around to the stable Sunday, and I told Robert I bought the mare. *Robert says, 'I guess it is all right,* I gave Henry leave to sell her provided he gave a mortgage on a team as good as the one I sold him.' In a few days afterwards I settled with Harbison and gave my note for the mare.

"Q. How soon was this after the sale in 1884?

"A. Well, I cannot say. It was a few days, I cannot say how long.

"Q. Who was at your house the day Robert was there?

"A. There was several, I cannot name them all, I think three or four or five or six was out.

"Q. Did Robert Littlejohn see that mare in your possession?

"A. I think he did, he was in the stable and talking about her.

"Q. Was Robert in the stable?

"A. Yes, him and me and several others; we were looking at the horses and she was tied among the rest."

In this testimony Billings is corroborated by certain admissions of the plaintiff proved on the trial.

The defendants introduced in evidence a mortgage, purporting to be executed by Henry Harbison on the 15th of March, 1884, to the plaintiff, upon "One bay horse nine years old, weighs about thirteen hundred twenty-five pounds. One brown horse seven years old, weighs about thirteen hundred pounds." The signature to this mortgage is clearly shown to be that of Harbison, and there is testimony tending to show that it was filed by the plaintiff, the entry on the fee book of the county clerk being, "August 8, 1884. From whom received, R. Littlejohn; amount, cents 20; for what services, Chat." This mortgage was given to secure the sum of $180 due on or before December 15, 1884. The filing on the mortgage shows it to have been on the 9th day of August, 1884. The plaintiff claims to have had no knowledge of this mortgage whatever, until just before the bringing of these actions. He denies having had any conversation with Billings or any one else in relation to releasing the mortgage given by Harbison to him in January, 1883. He admits, however, that he knew that Harbison had but one

span of horses, and that several months after Billings and Snyder purchased the property in controversy Harbison came to his place having another span of horses than those described in the petition. He claims that he made no inquiry of Harbison in regard to what disposition, if any, he had made of the property in controversy, nor does he claim to have made such inquiry of any one, until shortly before the bringing of these suits. There is testimony in the record tending to show that just before the plaintiff brought these actions, one of the horses described in the second mortgage was killed, because it was claimed to be affected with the glanders, and that the other was sold for taxes. Whether these facts had any weight in inducing the plaintiff to repudiate the second mortgage, was a question for the jury to consider. Taking the entire testimony together, it is evident that the plaintiff did release his liens upon the property described in the petitions in this case, and relied upon other security, promised or given by Harbison, and that the jury would not have been justified in returning verdicts different from what they did in the premises.

A number of instructions were excepted to, and the giving of the same is now assigned for error; and also a number of instructions were asked which the court refused to give, to which refusal exceptions were taken; but, as in our view, there was no error in giving or refusing such instructions, they need not be considered. The judgments of the court below are clearly right and are affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.