Seymour v. Standard Live Stock Commission Co.

*Kelligar & Ferneau,* for appellants.

*H. A. Lambert* and *Ernest F. Armstrong,* contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and GOOD, JJ.

---

GEORGE N. SEYMOUR, APPELLANT, V. STANDARD LIVE STOCK COMMISSION COMPANY ET AL., APPELLEES.

FILED APRIL 21, 1923.     No. 22330.

**Chattel Mortgages:** WAIVER OF LIEN. "Where a mortgagee of chattels authorizes the mortgagor to sell the property described in the mortgage at private sale, and with the proceeds pay the mortgage debt, and the sale is accordingly made, the mortgagee has thereby waived his lien." *Drexel v. Murphy,* 59 Neb. 210.

APPEAL from the district court for Dodge county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*Williams & Kryger* and *J. A. Donohoe,* for appellant.

*Dolezal, Spear & Mapes,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DEAN, JJ.; BEGLEY, District Judge.

LETTON, J.

This action is brought against the Standard Live Stock Commission Company and the Idlewild Farm Company for conversion of certain property covered by a chattel mortgage in favor of the plaintiff. The defense is release of the mortgage lien by permission given the mortgagor

to sell the property, and also ratification of the sale by the acceptance of a part of the proceeds, with knowledge of the facts.

Plaintiff is a banker at Elgin. He was the holder of a note executed by Andrew Wytaske for $6,730.60 payable December 12, 1920. This note was secured by a chattel mortgage upon 54 head of four-year-old steers, and upon other property. One Bennett was the agent of the plaintiff, employed by him to check up and inspect property covered by chattel mortgages in which he was interested. On December 6, 1920, Bennett went to the farm of Wytaske 16 miles northeast of O'Neill. He and Wytaske had a conversation about the debt and the chattel mortgage. Wytaske requested an extension of time, but Bennett told him Mr. Seymour wanted the money. Wytaske said he would have to ship and sell the cattle in order to pay the debt. Bennett requested him to ship the cattle in Mr. Seymour's name, or to have the money sent to the Elgin State Bank.

It is clear that Bennett knew that the cattle must be sold in order to pay the debt, and that the usual and ordinary method of sale of such cattle was by shipment to South Omaha, or some other market. It seems evident from his own testimony that this was the customary method of procuring the money to pay such mortgage debts, and that he expected Wytaske to ship the cattle as soon as he could obtain cars. On December 13, Wytaske shipped the cattle to the Standard Live Stock Commission Company, defendant, at South Omaha. One of the cars was shipped in his own name, another in the name of his son, Stanley, and about half a car-load in the name of one Kraft, who also had half a car-load of cattle in the same car. The commission company paid Andrew Wytaske $600 in cash, paid Stanley Wytaske, who accompanied his father, $600 in cash, and remitted $2,887.71 to a bank at O'Neill to be credited to the account of Stanley Wytaske. There is a stipulation in the record that the commission company was directed to make this remittance by both

Andrew and Stanley. A few days afterwards Stanley withdrew $1,800 in money from the bank and absconded, and on the same day $1,087.71, the remainder of the deposit, was credited to the account of Andrew Wytaske. Plaintiff received $1,026.46 from the amount in the bank, the remainder being applied on a note due from Andrew to the O'Neill bank.

Part of the cattle were sold by the purchaser from the commission company to the Idlewild Farm Company of Fremont, and it is in order to recover the value of these cattle that that corporation is made a defendant to the suit.

Plaintiff insists that when the commission company purchased the cattle it was charged with notice of his lien, which was a matter of public record, and is therefore liable for the value of the cattle. That it was chargeable with notice may be conceded. But we are satisfied that there was permission given to Wytaske to ship and sell the cattle, and this permission released the mortgage so far. Mr. Seymour denies that he ever gave permission to sell the cattle, but Bennett told Wytaske that he might sell if he shipped the cattle in Mr. Seymour's name, or had the money sent to the Elgin State Bank, and the facts in the case justify the conclusion that he had authority to give such direction. Even though the consent to sell was made upon such conditions, this would not affect the rights of the commission company, which had no knowledge of any such condition. By this permission Wytaske was made the agent of the mortgagee to sell and account for the proceeds, and a failure on his part to carry out the confidence reposed in him can only concern the mortgagee, who trusted him. *Littlejohn v. Pearson,* 23 Neb. 192; *Drexel v. Murphy,* 59 Neb. 210; *Tucker v. Mann,* 124 Ga. 1003; *Minneapolis Threshing Machine Co. v. Calhoun,* 37 S. Dak. 542; *Rusk County Lumber Co. v. Meyer,* 126 S. W. (Tex. Civ. App.) 317; *Flenniken v. Scruggs,* 15 S. Car. 88; *Pecos Valley Bank v. Evans-Snider-Buel Co.,* 107 Fed. 654; *Anderson v. South Chicago Brew-*

*ing Co.,* 173 Ill. 213; *Carr v. Brawley,* 34 Okla. 500, 43 L. R. A. n. s. 302.

The title to the property passed to the purchaser at the South Omaha market. The Idlewild company became vested with a good title upon its purchase from him. Furthermore, plaintiff accepted part of the proceeds of the sale after having knowledge of the transaction, and he is therefore estopped as against a purchaser to assert that the sale was invalid. *Ayres v. McConahey,* 65 Neb. 588.

AFFIRMED.