BILLY GEORGIS ET AL., V. STATE OF NEBRASKA.

FILED MAY 15, 1923.    No. 22981.

1. **Criminal Law:** EVIDENCE UNLAWFULLY OBTAINED: ADMISSIBILITY. "Where articles or information are offered in evidence, which are pertinent to the issue, the court will not exclude them because they may have been obtained in an irregular or illegal manner." *Billings v. State,* 109 Neb. 596.

2. ———: CONSPIRACY: DEFENSES. It is no defense to a criminal prosecution for conspiracy to obtain money from another by a confidence scheme, which, had it been successful, would amount to grand larceny, that the person to be defrauded intended to participate in an unlawful transaction.

3. ———: INSTRUCTIONS. Before error can be predicated upon the failure to charge the jury upon a given point, there must have been a request therefor, unless it is upon a question where a statute or positive rule of law requires the giving of such instruction.

4. **Larceny.** If a person obtains possession of money from the owner by fraud, with the intent to appropriate the same to his own use and deprive the owner of his property therein, the taking is larceny; and, where fraud is practiced to obtain possession, no actual violence is necessary, for the fraud takes the place thereof.

ERROR to the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Organ & Bohan* and *J. R. Lones,* for plaintiffs in error.

*O. S. Spillman, Attorney General* and *Lee Basye,* contra.

Heard before MORRISSEY, C. J., ALDRICH, DAY and GOOD, JJ., BUTTON, District Judge.

GOOD, J.

Billy Georgis and Louis S. Dochoff, plaintiffs in error and hereinafter referred to as defendants, have brought this case to this court for a review of the record of their conviction upon an information, charging them with the

Georgis v. State.

offense of conspiring to commit grand larceny. Each of
the defendants was sentenced to imprisonment in the
state penitentiary for a term of two years and to pay a
fine of $10,000.

The evidence indicates that defendants represented to
one Todoroff that they could purchase from the secretary
of the United States treasury paper like that used in
making United States currency, but that it could be
purchased only in quantities costing $10,000, and which
quantity, when printed, would make $1,500,000 in counter-
feit money that would pass as genuine, and that they
possessed a machine for printing counterfeit money; that
they had $6,700 and required $3,300 more, in order to
purchase a consignment of paper. They attempted to
persuade and induce Todoroff to furnish the $3,300 for
the unlawful purpose. Todoroff was shown samples of
the paper and a new $5 bill, which they claimed was one
that had been recently made. Todoroff feigned interest
in their proposition and promised to furnish $3,000 for
the unlawful scheme. He suggested giving them a check,
but they insisted on having money and in large de-
nominations, preferably $100 bills. He promised to go
to the bank and get the money, and fixed upon a time
and place when and where he would meet them and turn
over to them the $3,000. Todoroff then communicated
with officers of the United States secret service, and was
furnished a package of counterfeit bills, which he was
instructed to turn over to them instead of the real money.
He met them at the time and place agreed upon and
turned over the package of counterfeit bills, and instantly
the defendants were arrested by the officers of the law.
They were searched, and, after disclosing where their
room was in an Omaha hotel, police and United States
secret service officers visited their room, made some ob-
servation therein, and then a little later, with one of the
defendants, returned to the room and searched the same
and took therefrom papers and documents, some of which

were of an incriminating nature and which were used as evidence in the trial of the case.

1. Prior to the commencement of the trial, the defendants filed a motion in which they represented that certain documents and papers that were their private property had been unlawfully taken and removed from their custody and possession without their consent, and asked the court to enter an order directing the return of the property so taken from them. This motion was overruled, and the ruling thereon is assigned as error.

When some of these papers and documents, so taken, were offered in evidence, the defendants objected thereto, because they had been unlawfully taken from them, in violation of the provisions of both the federal and state Constitutions against unreasonable searches. This question has recently received careful attention in this court in the case of *Billings v. State*, 109 Neb. 596, wherein it was held: "Where articles or information are offered in evidence, which are pertinent to the issue, the court will not exclude them because they may have been obtained in an irregular or illegal manner." In that case, as in this, before trial motion was made for a return to the defendant of the articles seized by the officer. It is true that in that case the officer had a search warrant, but the articles seized were not on the premises described in the search warrant, and the decision is not based upon the fact that the officer had held a search warrant to search certain premises other than those where the articles were found. In that case there is a full discussion of the question and citation of the authorities.

2. Defendants contend that the evidence fails to disclose an indictable conspiracy, and argue that a conspiracy to be indictable must be one against an innocent person, and that the design of the law is not the protection of one rogue dealing with another, but rather to protect those who, for some honest purpose, are induced, upon fraudulent representations, to part with their money or property. The contention is unsound. It is

immaterial whether Todoroff intended to participate in a scheme for the making of counterfeit money. It is needless to say that defendants had no intention of using his money to purchase paper from the secretary of the United States treasury, to be used in making counterfeit money. They schemed and conspired, by appealing to his supposed cupidity, to obtain his money. His intent or purpose could in no way lessen their culpability. It is no defense to a criminal prosecution for conspiracy to obtain money from another by a confidence scheme, which, had it been successful, would amount to grand larceny, that the person to be defrauded intended to participate in an unlawful transaction. *People v. Martin*, 102 Cal. 558; *Gilmore v. People*, 87 Ill. App. 128; *Perkins v. State*, 67 Ind. 270; *People v. Watson*, 75 Mich. 582; *Cunningham v. State*, 61 N. J. Law, 67; *Horton v. State*, 85 Ohio St. 13; *State v. Martin*, 226 Mo. 538; 25 Cyc. 43.

Defendants' contention is unsound because there is nothing in the evidence that warrants a belief that Todoroff ever intended to participate in any fraudulent or unlawful transaction.

3. It is assigned as error that the court failed to instruct the jury that defendants could not be convicted unless the testimony of Todoroff was corroborated. This is urged apparently upon the assumption that Todoroff was a coconspirator with the defendants. The evidence does not warrant any such assumption. Todoroff was a competent witness, and it was for the jury to determine the weight to be given his testimony. It may be further noted that defendants requested no such instruction. Before error can be predicated upon the failure to charge the jury upon a given point, there must have been a request therefor, unless it is upon a question where a statute or positive rule of law requires the giving of such instruction. *Gettinger v. State*, 13 Neb. 308; *Edwards v. State*, 69 Neb. 386; *Goemann v. State*, 94 Neb. 582; 16 C. J. 1058, sec. 2500.

4. Defendants contend that there is a variance be-

tween the proof and the averments of the information; that the information charges a conspiracy to commit grand larceny, and that, if any offense is proved, it is a conspiracy to obtain money by false pretenses. The evidence is sufficient to sustain a finding that defendants conspired to obtain from Todoroff $3,000 of his money, with the intent to deprive him of his property therein and to appropriate to the use of the defendants. If a person obtains possession of money from the owner by fraud, with the intent to appropriate the same to his own use and deprive the owner of his property therein, the taking is larceny. While it is generally true that in larceny the taking must be a trespass against the owner's possession, yet, where fraud is practiced to obtain possession, no actual violence is necessary, for the fraud takes the place of violence. *Crum v. State,* 148 Ind. 401; *State v. Dobbins,* 152 Ia. 632; 25 Cyc. 40.

Defendants complain that the judgment is too severe and the sentence excessive. Defendants attempted by fraud to deprive another of his earnings acquired by years of toil. No mitigating circumstances are shown. For the protection of society it is necessary that such detestable conduct should be severely dealt with. We have little sympathy for those who seek to cheat and defraud the unwary and unsophisticated. The defendants richly deserve the penalty imposed.

No prejudicial error is disclosed, and the judgment is

AFFIRMED.