Farmers State Bank v. Anderson.

---

FARMERS STATE BANK OF PETERSBURG, APPELLEE, V. TOM ANDERSON ET AL., APPELLANTS.

FILED JULY 7, 1924. No. 22713.

Chattel Mortgages: SALE BY MORTGAGOR: RIGHT TO PROCEEDS. When a sale by the mortgagor of mortgaged chattels is made with the consent of the mortgagee, the former agreeing to apply the proceeds upon the mortgage debt, the mortgagor becomes the agent of the mortgagee with reference to such proceeds, which may be recovered by the mortgagee from any person having possession thereof not having a lawful claim thereto under or through the mortgagor.

APPEAL from the district court for Boone county: FREDERICK W. BUTTON, JUDGE. *Affirmed.*

*H. Halderson,* for appellants.

*Vail & Flory, contra.*

Heard before MORRISSEY, C. J., ROSE, LETTON and DEAN, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action brought by the plaintiff, Farmers State Bank of Petersburg, against the defendant, Newman Grove

State Bank, to recover the proceeds of a sale of 20 head of steers upon which plaintiff held a chattel mortgage securing a note of one Tom Anderson, who is also made defendant, but the contest is between the banks. Jury was waived and trial to the court resulted in judgment for plaintiff. Defendant, Newman Grove State Bank, appeals.

The mortgage was dated November 10, 1919, and purported to cover 44 head of steers in the possession of the mortgagor in Boone county, Nebraska, to secure a note for $2,112.44. The mortgage was duly filed for record November 11, 1919, and later assigned to the plaintiff. March 1, 1920, Anderson executed a mortgage on 60 head of cattle, 12 head of horses, 100 head of hogs, purporting to be all the live stock he owned, also 140 acres of corn in field, to secure a note of $1,733 due January 1, 1921, which mortgage and note were subsequently assigned to the Newman Grove State Bank. Shortly prior to December 6, 1920, an arrangement was entered into between Anderson and the Farmers State Bank that Anderson should ship the cattle to Omaha to be sold, and apply the proceeds upon the note of the plaintiff. In pursuance of such arrangement Anderson shipped 20 head of steers, and one heifer not covered by plaintiff's mortgage, to the Interstate Live Stock Company at Omaha, in his own name, and on December 6, 1920, 18 head of steers and the heifer were sold on the market, the net proceeds of said sale amounting to $1,015.26, which was deposited by the commission company in the Stock Yards National Bank of South Omaha to the credit of the Newman Grove State Bank. December 7 one steer was sold, netting $53.30, and on December 13 the last steer was sold, netting $45.95, the proceeds being treated in the same manner as the first sale. Notice of these credits having been received by the Newman Grove State Bank, they were credited to the checking account of Tom Anderson as follows: December 7, $1,015.26; December 10, $53.30; December 15, $45.95. December 9, 1920, Anderson gave his check on the Newman Grove State Bank payable to the Farmers State Bank for the proceeds

of the first two sales, to wit, $1,068.56, which check was presented for payment, the date not being shown, and payment refused and the check protested December 13, 1920. December 20 Anderson gave his check on the Newman Grove State Bank payable to the Farmers State Bank for the proceeds of the last sale, $45.95, and the same was paid. The excuse given by defendant bank for refusing payment of Anderson's check for $1,068.56 is that on December 10, 1920, it had applied that amount upon the note of Anderson held by the bank. There is in the evidence a charge slip dated December 10, 1920, purporting to evidence such application of funds, though the same is stamped paid December 11, and appears upon the ledger account of Anderson under date of December 12. As the date of presentment of Anderson's check payable to plaintiff is not shown, it is impossible to determine with accuracy whether the application of the fund to defendant's note was made after that fact, and so the rights of the parties in such situation need not be discussed.

The precise question for determination is whether or not a mortgagee of chattels who has consented to their sale by the mortgagor upon the latter agreeing to apply the proceeds of such sale in satisfaction of the note secured by the mortgage may claim such proceeds in the hands of a bank in which without the knowledge or consent of the mortgagor the same have been deposited in the name of mortgagor, as against a claim of the bank to apply the same upon an indebtedness to it of the mortgagor, which is not yet due, without any direction from him so to do.

It is contended by defendant that the mortgagee, by consenting to a sale by the mortgagor, waived his mortgage lien. This is undoubtedly good law so far as any claim of the mortgagee against the chattels is concerned, as was distinctly held in *Seymour v. Standard Live Stock Commission Co.*, 110 Neb. 185, but there is no such question here—the mortgagor had the right to sell and title passed to the purchaser—the present dispute concerns only the proceeds of the sale. The mortgage to plaintiff covered all

the steers in the possession of Anderson at its date, and cases cited by defendant holding a description too indefinite because the mortgagor had a large number of other cattle to which the description in the mortgage might apply are not in point. The record of plaintiff's mortgage was constructive notice to defendant at the time it purchased the note and mortgage held by it, and it must therefore be charged with knowledge that, as to 44 head of steers or some lesser number, its mortgage was a second lien.

Defendant's position is that the first mortgagee, by consenting to the sale by the mortgagor, waived the lien of the first mortgagee, and that the lien did not follow the proceeds. It cites a number of cases from this state (*Littlejohn v. Pearson,* 23 Neb. 192, *Drexel v. Murphy,* 59 Neb. 210, and *Seymour v. Standard Live Stock Commission Co.,* 110 Neb. 185), but the first two of those cases were replevin actions for the recovery of the mortgaged property, and the last one, an action of conversion against the commission company which made the sale. It is clear in such cases that, as to persons dealing with the property in reliance upon actual or apparent authority of the mortgagee to the mortgagor to make the sale, the same was valid and the mortgagee must be held to have waived his lien.

*New England Mortgage Security Co. v. Great Western Elevator Co.,* 6 N. Dak. 407, was an action against the purchaser of grain covered by the chattel mortgage, to the sale of which the mortgagee had consented, to recover the sale price, and has no application here.

The case upon which defendant seems principally to rely is *Smith v. Crawford Courty State Bank,* 99 Ia. 282, where it was sought to recover from the defendant bank the proceeds of the sale of mortgaged cattle, made with the consent of the mortgagee upon the agreement by the mortgagor that he would apply the proceeds to the payment of the plaintiff's mortgage. Instead of complying with his agreement, the mortgagor deposited the proceeds in defendant bank, which, with the consent of the mortgagor, applied a portion of said proceeds to a second mortgage

held by the bank, the mortgagor giving his check to the plaintiff for the balance, some $2,000, which was paid, but which was insufficient to satisfy the first mortgage, and the court held that under these circumstances the defendant, having made the application with the consent of the mortgagor, might retain the fund, saying:

"In making the sale, then, Carvell (the mortgagor) was not acting as agent for plaintiff, but dealing upon his own account. The funds, therefore, which were the proceeds of the sale, were Carvell's in so far, at least, that his disposition of the same would bind plaintiff, he having assented to Carvell's making the sale. They were not in any manner impressed with a trust character."

We are not entirely satisfied with this statement of the law though, as applied to the facts of that case, and, with the qualification stated, it may not be criticised. We think, however, that as between the parties the mortgagor was an agent of the mortgagee. It may be conceded that, inasmuch as the title to mortgaged chattels remains in the mortgagor, and he was, therefore, dealing with his own property, the validity of the sale could not be disputed by the mortgagee upon the basis of any private understanding between him and the mortgagor. Nevertheless, we think when the mortgagor received the proceeds he held them as the agent of the mortgagee for the purpose of applying them upon the mortgage debt; and there seems to be no doubt but that, as between the mortgagor and mortgagee, the lien of the mortgage was transferred from the chattels to the proceeds of the sale. This, of course, would not be binding upon any one who in the ordinary course of business received the proceeds from the mortgagor without notice of the condition under which he held them; and if the mortgagor used the same to pay a debt to such person or made any other similar disposition of them contrary to his obligations as agent, the mortgagee would have to look exclusively to the mortgagor for payment of his debt. As we said in the *Seymour* case above cited: "By this permission Wytaske (mortgagor) was made the agent of the mort-

gagee to sell and account for the proceeds, and a failure
on his part to carry out the confidence reposed in him can
only concern the mortgagee who trusted him." The rea-
sons.for this are well stated in the case of *Tanner v. Lee,*
121 Ga. 524, in which it was held: "If without notice of
another's claim thereto a creditor receives money from
his debtor in payment of a preexisting debt, the true own-
er cannot thereafter compel such *bona fide* creditor to ac-
count therefor." The rule is founded upon the proposition
that the one lawfully receiving currency from another is
under no obligation to trace the payer's title, for if it were
not so the creditor could never be certain that his debt was
paid.

We think, however, a different question is presented in
the case at bar. The fund was not received by defendant
bank from Anderson, nor with his knowledge or consent.
The bank simply found itself in possession of the fund and
assumed that Anderson had sent it there. While it is al-
leged in the answer that "Anderson requested that the pro-
ceeds be used for payment of said (defendant's) note and
that the amount of stock shipment returned be indorsed on
said note," there is no evidence to sustain that allegation,
but the facts as established by the evidence are as follows:
Anderson had dealings with the defendant bank up to May
20, 1919, at which date his account was closed. There is
evidence that he wrote a letter to the commission company
said to contain instructions to send the proceeds to the
plaintiff bank, but the letter was not introduced, and that
matter, if true, cannot be considered. He has testified, how-
ever, that he gave no instructions to the commission com-
pany to send the proceeds to the Newman Grove State
Bank, and it is a fair inference from the evidence that the
proceeds were so transmitted by mistake of the commis-
sion company, but in accordance with the course of pre-
vious dealings it had with Anderson. Anderson had no
account with defendant bank from May 20, 1919, until the
fund in question was deposited there on December 7, 1920,
as above detailed. Anderson had no knowledge of such de-

posit until he received notice thereof through the mail from the commission company, when he at once executed and delivered his check upon defendant bank, dated December 9, to plaintiff for $1,068.56 in compliance with his agreement. After the issuance of this check the defendant applied the fund to the payment of its debt not yet due from Anderson. Whether such application was made before or after the presentment of the check is not certain.

We are, therefore, to determine whether or not under this state of facts the bank had a right to make such application. It may be conceded, although we do not decide the question, that if Anderson had consented to such application or had drawn his check in favor of the defendant bank and delivered the same to be applied upon said indebtedness, the plaintiff could not question the transaction; but we are clearly of the opinion that without authority from the mortgagor, and the bank's position not having been altered to its detriment, the claim of plaintiff to the fund intrusted to its agent, and found in the possession of defendant under the circumstances shown, is superior to the claim, if any, of defendant. It was claimed by the president of defendant bank that its debt became due at once upon the sale of the property by the mortgagor, but the mortgage contains no such condition and the mortgagee could follow the property into the hands of the purchaser. We have concluded that as between the plaintiff and defendant the proceeds of the sale of the cattle belonged to the plaintiff, in law as well as in equity and justice.

It is proper at this point to refer to the state of the pleadings. The petition declared as for a conversion of the fund in question, alleging that the mortgagor and defendant bank connived together to have the proceeds sent to defendant bank. There is not a particle of evidence to sustain this charge, but on the contrary it appears that the mortgagor made every effort to keep his agreement with the plaintiff. The answer, as before stated, alleged a request upon the part of Anderson that the fund be applied upon defendant's mortgage, and there was no reply filed,

in which situation, ordinarily, such allegation would be taken as true. The evidence for defendant, however, disputes this allegation. It is to the effect that defendant had no communication with Anderson after the money was deposited, and the only basis for the contention is that, at the time the note and mortgage were executed, Anderson stated that he would pay defendant when he sold the cattle. This is far different·from a request to apply the proceeds after the sale. The case appears to have been tried upon the theory that this was one of the disputed questions. Under these circumstances the failure to file a reply should not be considered as an admission of the disputed fact. Furthermore, at the time the bank attempted to apply the fund it had no knowledge that such fund represénted the proceeds of the sale of any chattels covered by its mortgage. It simply *presumed* that such was the fact from the manner in which the proceeds came into its hands. If the defendant had no legal right to apply the fund in question as it did, as against the claim of the plaintiff, then its act in so doing was a conversion and the action is well brought on that theory; on the other hand, the judgment complained of may be sustained as an action for money received, to which the plaintiff had, in equity, a claim superior to that of the defendant.

In any view of the facts established by the record, the judgment of the district court is right, and it would subserve no useful purpose to reverse the same and require another trial upon reconstructed pleadings, as in the end no different judgment could be sustained.

AFFIRMED.

Note—See Chattel Mortgages, 11 C. J. p. 633, sec. 347.