## WILLIAM FIEHN V. STATE OF NEBRASKA.

FILED NOVEMBER 4, 1932.   No. 28319.

*O. S. Spillman* and *Forrest Lear,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle,* contra.

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This record presents a proceeding in error from the district court for Stanton county, prosecuted by William Fiehn, who will be hereinafter referred to as the defendant. An information was filed in that case charging him in proper terms with having, on October 25, 1930, after mortgaging certain described corn and during the existence of the lien created thereby, unlawfully sold a portion thereof to Louis Smithberger, without first procuring the consent in writing of the owner and holder of the debt secured by this mortgage, in violation of section 69-109, Comp. St. 1929. A trial to a jury resulted in a verdict of guilty, and a sentence of confinement for one year in the state penitentiary.

Substantially four grounds of reversal are relied on, viz.: (1) Failure of the district court to instruct the jury as to the presumption of innocence; (2) that the mortgagee, by authorizing the sale complained of, waived his lien; (3) that the sale of the mortgaged chattels by the mortgagor was made with the consent of the mortgagee, the former agreeing to apply the proceeds upon the mortgage debt, and thus the mortgagor became the agent of the mortgagee; (4) the tender of payment by mortgagor purged the transaction of criminality. Defendant further contends that the sentence is excessive.

As to the failure of the district court to instruct as to the presumption of innocence, the record fails to show any request for an instruction on that subject; and neither is such omission made one of the grounds of defendant's motion for a new trial. However, the district court, on its own motion, instructed the jury "that before the defendant can be found guilty of the crime charged in said information the state must have proved his guilt of the crime so charged beyond a reasonable doubt." The term "reasonable doubt" is also fully and properly defined. On this subject an eminent court said: "The doctrine of presumption of innocence and reasonable doubt are so closely related that it has been held that it

is not reversible error to omit to instruct on the law of presumption of innocence if the court has fully instructed on the subject of reasonable doubt." *State v. Douglas,* 258 Mo. 281.

In this jurisdiction we are committed to the rule that no conviction in a criminal case will be reversed for nondirection where no instructions were requested by the accused; and that this rule applies and controls where the omission to instruct relates to the presumption of innocence. This principle is subject, however, to the following qualification: "When his attention is called to that point, it is the duty of a trial judge, in a criminal case, to instruct the jury concerning the presumption of innocence to which the defendant is entitled, and he is not excused from so doing because an instruction presented by the defendant is improper in form. In such case he should modify the instruction by eliminating the objectionable portion thereof, or prepare and submit to the jury a proper instruction on his own motion." *Yeoman v. State,* 81 Neb. 244. As already suggested, no request for an instruction on this subject was tendered by defendant; neither was the attention of the presiding judge in any manner called to this point. As to the necessity of requesting instructions, see: *Gettinger v. State,* 13 Neb. 308; *Hill v. State,* 42 Neb. 503; *Housh v. State,* 43 Neb. 163; *Barr v. State,* 45 Neb. 458; *Edwards v. State,* 69 Neb. 386; *Georgis v. State,* 110 Neb. 352; *Mauer v. State,* 113 Neb. 418; *Osborne v. State,* 115 Neb. 65; *Grosh v. State,* 118 Neb. 517. It follows that the present record does not disclose that the trial court committed reversible error in failing to instruct as to the presumption of innocence.

As to the second and third contentions of the defendant, viz., that by authorizing the sale of the mortgaged corn the mortgagee waived his lien thereon; and by consenting to such sale in reliance on the promise of the mortgagor to apply the proceeds on the mortgage debt, the mortgagee thereby made the mortgagor his agent in

the transaction, it is to be observed that they are predicated upon the alleged fact that the mortgagee conferred the claimed authority in this case, or actually consented to the sale made. But whether authority to sell was conferred, or consent given, are disputed facts which the conflicting evidence presents to the jury for determination. On this subject the mortgagee testifies, with reference to the 1930 crop from which the sales were admittedly made: "Q. Have you ever personally talked to Mr. Fiehn regarding your rent notes or regarding that mortgage since the date of March 1, 1930? A. No. Q. Or had any correspondence with him? A. No. Q. Have you, in any manner, consented, or given him any consent, to sell any of the property under the mortgage that was given? A. No." The agent of this mortgagee, having exclusive charge of the collecting of the rent for this year, says in part: "Q. Now, following the giving of that mortgage, exhibit 4, did you, in any manner, authorize Mr. Fiehn to sell any of that mortgaged corn to Louis Smithberger? A. I did not. Q. Or to any person? A. I did not. Q. Did you give any written consent to Mr. Fiehn to sell any of this corn covered by the chattel mortgage, exhibit 4, to Louis Smithberger or to any other person? A. I did not."

True, the defendant's evidence conflicts with the statements just quoted, but the trial jury by their verdict determined this issue of fact against him.

But, even if the facts were as testified to by the defendant, we find ourselves unable to assent to his contentions. He relies on the doctrine announced by this court in *State v. Butcher*, 104 Neb. 380. The facts in the *Butcher* case were epitomized as follows: "It appears that defendant gave a mortgage to the Central City National Bank on a certain manure spreader, and that defendant sold the spreader at a public sale. The clerk of the sale was president of the mortgagee bank, and as clerk received the proceeds of the sale of the spreader. The record is not clear on whether the clerk gave express

oral consent to this sale, but there was either oral consent in so many words or acquiescence by remaining silent. Defendant bought a team of horses at the sale, and the clerk turned the proceeds of the spreader over to the party selling the horses, knowing at the time that the mortgaged spreader had been sold. The bank has since been unable to collect the full amount of the mortgage debt."

The contention presented to this court in that case involved in substance the issue of law here presented, as will be seen from the following excerpt from the brief on rehearing filed in the *Butcher* case: "Where a mortgagee of chattels authorizes the mortgagor to sell the property described in the mortgage at private sale, and with the proceeds pay the mortgage debt, and the sale is accordingly made, the mortgagee has thereby waived his lien. *Drexel v. Murphy*, 59 Neb. 210; *Littlejohn v. Pearson*, 23 Neb. 192." This contention as applied to a criminal prosecution under the statute was then, in view of the opinion announced, necessarily rejected by this court and it adhered to its former opinion in which it expressly declared:

"Section 534, Rev. St. 1913, subjects each and every person who violates the provisions thereof, and thereby depriving the mortgagee of his mortgage security to his injury, to the punishment therein provided.

"In a prosecution under said section, the accused may show as a defense that the full value of the mortgaged chattel has been turned over to the mortgagee in payment in whole or in part of the mortgage debt, or that the mortgage debt has been paid.

"The foregoing statute makes the inhibited act constitute the crime."

In the instant case no part of the $583.20, which the defendant actually received for the sale of the mortgaged corn to Smithberger, or any sum equivalent thereto, was ever paid by him or in his behalf to the mortgagee; nor has the mortgage debt been paid. It follows that the

facts in the present case do not invoke the application of the rule announced in *State v. Butcher, supra,* but exclude the possibility of a defense logically based thereon. This is true for the reason that without any conflict in the evidence it appears that the accused has utterly failed to "show as a defense that the full value of the mortgaged chattel (sold by him) has been turned over to the mortgagee in payment in whole or in part of the mortgage debt, or that the mortgage debt has been paid." *State v. Butcher,* 104 Neb. 380.

Neither do we find that the situation of the defendant has in any way been altered by the so-called tender made in his behalf. It appears from the evidence of defendant's witnesses that "after the defendant had been arrested" $600 had been raised, which was taken into the office of the mortgagee's agent in Stanton, Nebraska, and was offered in connection with a tendered chattel mortgage, to secure the remainder of the unpaid rent, then long past due. This agent asked time to communicate the offer in writing to the mortgagee, who was a resident of Hastings. The defendant's representative insisted on an immediate acceptance. When six days later the mortgagee authorized the acceptance of the offer as made, the defendant's representative returned the answer that the offer could not then be carried out. Thereafter nothing further was done, and nothing was in fact paid. The nature and conditions of this offer are disclosed by the following testimony of the witness who, in the defendant's behalf, transmitted the offer to the mortgagee's agent: "Q. Now, the $600 and the mortgages you offered that day on your car and the machinery were offered in complete payment and settlement of all the amounts due by your father on the rent notes for 1930, were they not? A. Yes; they were. Q. And on the condition that they be returned in complete settlement? A. Yes." At the time this transaction occurred, more than $1,100 was still unpaid on the 1930 rent, secured by a chattel mortgage on the crops raised that year; and defendant had then converted to his own

use and benefit mortgaged chattels the full value of which was in excess of the cash offered.

It will also be observed that the $600 offered was not tendered in payment of the "full value of the chattels sold Smithberger." The very conditions of the tender precluded such an application by the mortgagee. Complete settlement of the 1930 rent unpaid, then in excess of $1,100, was the sole basis of the offer. The acceptance of this offer involved the waiver of all rights the mortgagee might have then possessed against those who had purchased any part of the mortgaged corn with knowledge, actual or constructive, of the existence of the chattel mortgage thereon.

The rule is: "A tender to be sufficient in law must be in amount (in money) at least equal to the amount due; and an offer of a part of the amount due does not avail as a tender." 26 R. C. L. 639, sec. 20. So, too, "It is a general rule that a tender, to be effectual, must be unconditional, or, as sometimes expressed, it must be without conditions to which the creditor can have a valid objection, or which will be prejudicial to his rights." 26 R. C. L. 640, sec. 21. Thus, being wholly insufficient in amount, and made upon conditions prejudicial to the mortgagee at a time subsequent to default, and not being kept good, it obviously was wholly without legal effect. *Tompkins v. Batie,* 11 Neb. 147.

A careful reading of the record, including the evidence, convinces us that the accused has had a fair trial, and that the verdict of the jury finds ample support in the evidence. The trial court's instructions to the jury were certainly as favorable to the defendant, under the condition of the record, as could be justified by the law of the land. Indeed, the extent of this favorable scope is such as to suggest doubt as to their technical correctness as principles of law, in view of the explicit terms of the statute involved. However, the error, if an error, was in favor of the defendant and not against him. Certainly, in view of the admitted facts, as well as the issues of

fact determined adversely to the accused by the jury's verdict, the sentence imposed by the trial court is not deemed excessive.

The judgment and sentence are therefore,

AFFIRMED.