Matthias, J.
The question of law presented involves primarily an interpretation of Section 12447-1, General Code, which became effective September 16, 1943. This statute which defines “larceny by trick” has not heretofore been considered by this court. It reads as follows:
“Whoever obtains possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token, or writing is guilty of larceny by trick, and, if the value of the thing obtained by such false or fradulent representation, pretense, token, or writing is thirty-five[1] dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than seven years, or, if the value is less than that sum, be fined not more than two[2] hundred dollars, or imprisoned not more than thirty[3] days, or both.”
Throughout this trial, there was a sharp conflict between the state and the defendant as to whether it was necessary for the jury to find as one of the elements of “larceny by trick” an intent to unlawfully and permanently deprive the owner of the possession of his property. In support of its contention, the state requested the court to give to the jury in writing before argument the following charge:
“I charge you that it is the law of Ohio, applicable to this case, that a man is presumed to intend the natural and probable consequences of his act, and if you find beyond a reasonable doubt that the natural and probable consequences of the act of the defendant in any or all counts of the indictment was unlawful, then you are to presume that his intent was unlawful.”
*232 This charge was given over the objection and exception of the defendant.
The defendant then requested the court to charge in writing before argument in part as follows:
“I charge you further that it is the law of Ohio, applicable to this case, that one of the elements of the crime of larceny by trick is the intent to unlawfully deprive the owner of the possession of his property permanently. This intent must exist at the exact time when the possession of the property is obtained, and if the intent does not exist at the time, but comes into being after possession is obtained, then and in that event, the crime of larceny by trick has not been committed, even assuming that all the other elements of the crime should exist and it would be your duty in that event to find the defendant not guilty.
“The court charges you further that it is the law of Ohio, applicable to this case, that a false representation or pretense must relate to a past or existing fact and must be made with knowledge of its falsity. No representation, as to a future event, whether in the form of a promise, or not, can be made the basis of a false representation or pretense, under which a person can be found guilty of the crime of larceny by trick.
“If you find that the false representations or pretenses when made related to a future event, rather than as to a past or existing fact, it will be your duty to find the defendant not guilty, even though you may find all the other elements of the crime to have been proven. ’ ’
These requests the court refused to give to which refusal defendant excepted.
The portion of the general charge of the trial court defining the offense and instructing the jury particularly as to “intent” is as follows:
“You will note that the first element of the crime *233 of larceny by trick is that an accused must have obtained possession of something, or title to something.
“To have possession is to have actual, physical control of a thing and to hold it for one’s self.
“To have title to something is to own it.
“These two elements — possession and title — need not be present. If all other elements of the crime are present, an accused need only have obtained ‘possession’ or ‘title.’ Both elements may be present in a given case but either will suffice.
“The second element is that possession of, or title to, a thing of value be obtained. In each count of the indictment in this case it is charged that possession of a sum of money was obtained. Our law defines a thing of value, and money is within its definition. You are therefore instructed that if possession of any sum of money was obtained, possession of a thing of value was obtained.
“The third element is that possession or title must have been obtained with the consent of the person from whom it was obtained. Consent in such a case means that the person who delivered money did so voluntarily or by agreement. There must have existed no compulsion but the person surrendering possession or title must have been willing to do so.
“The fourth element requires that such consent of the one from whom possession or title, or both, is or are taken must have been induced by a false or fraudulent representation, pretense, token, or writing of the one who obtains the possession or title.
“A representation is false when faithlessly or treacherously made when the maker knows that it is not true or that he does not intend to carry it out.
“It is a presentation in words or statement not honestly made.
“A representation is fraudulent when it is tricky, deceitful or dishonest.
*234 “A pretense is the act of holding out or offering to another something false or feigned; it is a presentation of what is deceptive or hypocritical; it is a showing of what is unreal and concealing what is real.
“A writing is the expression of ideas by written words, that which is written, any written paper or document.
‘1 The fifth element requires that the consent to part with possession or title must have been induced by a false or fraudulent representation, pretense, token, or writing.
“A person is induced to do a thing when he is decisively influenced to do that thing; so that in a case of this kind he must have parted with possession or title as a result of the false or fraudulent representation, pretense, token or writing of another.
“The indictment in this case charges only the obtaining of possession of monies so that you may disregard any and all reference to title.
“The crime of larceny by trick charged in the indictment in this case involves intent. To constitute a criminal offense in this case two things must be established; the intent to do the wrong or commit the crime, and the performance of the act or the commission of the wrong in pursuance of the intent. The intent and the act must concur in point of time. It is not always possible to prove intent by direct evidence, because intent is within the mind of man, and in determining intent you may look to all surrounding circumstances and consider what was said or what was done. The law presumes that one intends the natural consequences of his statements and his acts.
“The law of this state provides that in any criminal case where the defendant’s motive, intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may *235 tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan or system in doing the act in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show commission of another or subsequent crime by the defendant.
“In the case now on trial the state has produced some evidence in support of its claim that the defendant has committed other acts like those charged in the indictment in this case. The court instructs and cautions you that you may only consider the evidence concerning those other or like acts for the sole purpose of throwing whatever light they do, if any, on the motive or intent of the defendant at the time of the claimed obtaining of possession of the monies mentioned in the indictment.
L ( * # #
“I will now summarize as to what you must find, and be convinced of beyond a reasonable doubt, in order to find the defendant guilty on any count of the indictment.
“You must find that:
“1. Leslie T. Healy obtained possession of property of value of another.
“2. That he obtained it with the consent of the person from whom obtained.
“3. That he obtained it by means of a false or fraudulent representation, pretense, token or writing.
“4. That the false or fraudulent representation, pretense, token or writing was or were the inducement which led the person from whom the property was taken to deliver or surrender- the possession to Healy.
“5. That the transaction took place in Cuyahoga county, Ohio.”
The Court of Appeals held these instructions erroneous on the ground that since “an intent to de *236 prive the owner of his property” is an essential element of the crime of larceny by trick, as defined in Section 12447-1, General Code, the trial court committed prejudicial error in failing to thus specifically instruct the jury.
In the majority opinion of the Court of Appeals, it is stated:
“The trial court adopted a literal construction of the language of the statute as hereinabove quoted and as it appears in the privately published annotated codes of Ohio laws.
í Í ^
“* * * The definition of the crime as contained in the charge of the court is based upon a literal construction of the operative terms of the statute. By the instructions relating to proof of ‘an intent to commit the crime’ the jury was told in effect that proof of the acts described in the language of the statute, without more, was sufficient to warrant a conviction. ’ ’
This literal application of the statutes and the charge of the trial court in the terms of the statute were disapproved by the Court of Appeals on the ground primarily that Section 12447-1, General Code, as set forth in 120 Ohio Laws, 444, was enacted as a supplement to Section 12447, General Code, which is the general larceny statute. Section 12447 reads as follows:
“Whoever steals anything of value is guilty of larceny, and, if the value of the thing stolen is thirty-five[1] dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than seven years, or, if the value is less than that sum, be fined not more than two[2] hundred dollars, or imprisoned not more than thirty[3] days, or both.”
*237 The Court of Appeals held that under the general larceny statute the word, “larceny,” and the word, “steal,” are synonymous and that the common-law definition of larceny has been adopted in this state. The court therefore held that larceny is “the wrongful or felonious taking and carrying away of the personal property of another of some intrinsic or substantial value without the owner’s consent, and with the intent permanently to deprive him thereof ” (25 Ohio Jurisprudence, 6), and that the failure of the trial court to include therein substantially the italicized sentence above made the charge inadequate and erroneous. That conclusion is no doubt based upon the following language of McIlvaine, J., in the case of Stanley v. State, 24 Ohio St., 166, 170, 15 Am. Rep., 604:
“Larceny, under the statute of this state, is the same as at common law, and may be defined to be felonious taking and carrying away of the personal property of another.”
However, this court has held that even where the taking is not coupled with an intention to permanently deprive the owner of possession it is nevertheless larceny. See Berry v. State, 31 Ohio St., 219, 27 Am. Rep., 506, wherein it is stated in the syllabus:
“The wrongful taking and carrying-away of the property of another, without his consent, with intent to conceal it until the owner offers a reward for its return, and for the purpose of obtaining the reward, is larceny.”
Likewise, this court has considered 'cases in which the owner voluntarily parted with the possession of his property as the result of fraud or other false inducement, and in the case of Kellogg v. State, 26 Ohio St., 15, McIlvaine, C. J., stated:
“To constitute larceny in a case where the owner voluntarily parts with the possession of his property,. *238 two other conditions are essential: 1. The owner, at the time of parting with the possession, mnst expect and intend that the thing delivered will be returned to him or disposed of under his direction for his benefit; 2. The person taking the possession must, at the time, intend to deprive the owner of his property in the thing delivered.”
In neither Section 12447 nor Section 12447-1, General Code, does the statute require by its term a “specific intent.” The Court of Appeals held that, since it has become a generally accepted rule in prosecutions under the larceny statute (Section 12447, General Code) to require a charge that a specific intent on the part of the accused is an element of the offense, a like rule should be applied to a prosecution under the larceny by trick statute (Section 12447-1, General Code), basing this view primarily on the fact that the latter section is supplemental to the larceny statute and they must be construed together.
In an examination of the language in the larceny by trick statute (Section 12447-1, General Code), it is to be noted that nowhere is the word, ‘ ‘ steal, ’ ’ used; instead the statute provides that “whoever obtains possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token, or writing is guilty of larceny by trick.”
The word, “obtain,” as used in the criminal statutes has heretofore been construed by this court in the case of Tingue v. State, 90 Ohio St., 368, 108 N. E., 222, Ann. Cas. 1916C, 1156, paragraph one of the syllabus reading as follows:
“The word, ‘obtain,’ as used in Section 13104, General Code [the false pretense statute] is not limited to getting, securing or appropriating money or property as owner. It includes as well the getting or *239 securing of money or property by way of a loan.”
As stated in the opinion in that case, “the word ‘obtain’ means just what it says, to get, to secure possession of. It is used in the ordinary sense and has no technical meaning beyond that.”
The larceny by trick statute would have no real purpose were it construed as merely a supplement to the general larceny statute. Larceny by trick has been punished under a general statute, and there are many cases in the various jurisdictions throughout the United States which recognize this application of a general larceny statute. See cases cited in 26 A. L. R., 381. The proper interpretation of the larceny by trick statute (Section 12447-1, General Code) is to be determined from the words used by the General Assembly. It is intended to be broader than the larceny statute, to include cases where either possession or title is obtained with consent of the owner by fraudulent acts and to provide that the commission of the fraudulent acts, coupled with the obtaining of possession or title to the property, is sufficient to constitute an offense.
It seems clear that where a statute in defining an offense is silent on the question of intent and thereby indicates the purpose of the General Assembly to make proof of a specific intent unnecessary, proof of a general intent to do the proscribed act is sufficient, there being no common-law crimes or common-law criminal procedure in Ohio. State v. Huffman, 131 Ohio St., 27, 1 N. E. (2d), 313.
The Court of Common Pleas in its charge properly applied the language of the statute. The court charged generally on intent and it would have been error had the court attempted to establish by fiat some definition of specific intent which is not required by the statute to constitute the offense.
The authority of the General Assembly to define *240 crimes and offenses in this state and to determine what acts are essential to constitute a violation of the statute is so well established that citation of authority-in support thereof is unnecessary. The exercise of iliis legislative authority by the enactment of Section 12447-1, General Code, violated no provision of the Constitution of Ohio or of the United States, but was entirely consonant therewith.
Section 12447-1, General Code, was clearly designed and enacted for the purpose of protecting the innocent from ingenuous fraudulent schemes, and that purpose should not be thwarted by an interpretation which would in effect nullify its very salutary provisions.
“Courts will not by the strict construction of penal statutes defeat the intention of the lawmaker. * * * A penal statute should receive a reasonable and common sense construction, and ‘its force should not be frittered away by niceties and refinements at war with the practical administration of justice.’ ” 2 Sutherland on Statutory Construction (2 Ed.), Section 528.
The following statement in 37 Ohio Jurisprudence, 750, Section 422, is supported by decisions of this court there cited:
“* * * while criminal statutes are to be strictly construed in favor of the defendant, the courts are not authorized so to interpret them as to defeat the obvious purpose and intent of the legislature.”
The second ground of reversal by the Court of Appeals is error of law by the Court of Common Pleas in the exclusion of evidence offered by the defendant. The following portion of the opinion of the majority of the Court of Appeals discloses such basis of the reversal:
“We are of the opinion that it was error to exclude from the consideration of the jury the ledger sheets of defendant’s commercial account, and the evidence offered by him in respect of his completion of homes *241 in 1946 at a financial loss to himself. Such evidence was competent as bearing upon defendant’s intent and upon the allegations contained in the bill of particulars that the defendant ‘during the period begining with June 21, 1946 and ending with January 13, 1947, inclusive, carried on and carried out a scheme and artifice to trick and to defraud each and all of the persons named in the various counts of the indictment. ’ ”
In discussing this ground of reversal it is pertinent to state in summary the evidence on which the verdict of the jury was based.
The record in this case is voluminous. It is disclosed that the defendant, Leslie T. Healy, at the times alleged in the indictment was a real estate broker and builder and had been engaged in that business for about 24 years during which time he had constructed many homes in and about Cleveland.
In 1940 the defendant acquired an option on an allotment known as the Bexley Park Subdivision in South Euclid, and in 1943 and 1944 with some financial help from one Anthony Mutillo he exercised the option and took title to the entire subdivision which then consisted of approximately 400 lots. As security to Mutillo, who had advanced the sum of $3,000, the defendant executed a blanket mortgage with a contemporaneous written agreement establishing a release price for each lot. About 75 homes were built in Bexley Park Subdivision after a release was secured for each lot.
In July 1946, the defendant conveyed the subdivision, then consisting of about 220 lots, to his then wife, Florence C. Healy, as the result of his marital controversy. All the transactions on which the counts of the indictment were based occurred after this conveyance by Healy to his wife.
The record discloses also that in addition to the *242 deed to Ms wife, the defendant deeded 21 lots in the subdivision in settlement of a contract for paving which Mutillo performed and at the time of the transactions in questiqn nearly all these lots stood in the name of Anthony C. Mutillo.
The counts of the indictment were based on contracts made by the defendant with, prospective purchasers of real estate. Since each transaction followed a similar course, separate discussions of the various transactions are not essential. In each count, the defendant is charged with agreeing to construct a home for a purchaser, on a lot which he represented that he owned. This he did by displaying a plat of the subdivision, without disclosing to the prospective purchaser that the lot was heavily encumbered with delinquent taxes. As a prerequisite to signing the contract the defendant required the payment to him of the sum of $1,000 and would consent that the balance of the required deposit be placed in escrow with the bank from whom the construction loan might be procured. These transactions occurred between July 15, 1946, and March 31, 1947. The record discloses that in each case, although such deposit was required and made, no construction was ever started. In most cases, too, legal title to the lots was not in the name of the defendant and in one instance he neither had title to nor a contract to buy the lot. In another instance, upon the payment of an additional substantial sum an excavation on the lot was commenced and sewer connections arranged for. However, the record discloses that the cost of that work was not paid for and thereafter a mechanic’s lien was filed against the premises.
In most cases erection of homes was promised, but repeated demands for action went unheeded. It is disclosed that Healy was difficult to find and in many instances when finally located and refund of deposit *243 demanded he would state that he was in financial difficulties and unable to repay the deposits entrusted to him. During the time some of these transactions were being consummated other persons who had previously made deposits under like circumstances were demanding refunds thereof. When sufficient pressure was brought to bear upon the defendant he made small repayments on the deposits made with him and in each of the transactions upon which the counts of the indictment were based there was either no refund or a very small repayment.
The record discloses also evidence of two transactions other than those included in the indictment, in which following similar representations by Healy he procured deposits of $1,000 each and similarly failed to perform by the erection of the homes promised.
The evidence adduced by the state is sufficient to support a conviction of the defendant of the offense of obtaining possession or title of property by larceny by trick as defined by Section 12447-1, General Code. In each transaction the money was obtained by the defendant upon his promise to devote it to a specified purpose — the construction of a house of a specified design on a designated lot for a fixed price. The money was thus procured by the defendant from each of these various parties for a designated specific purpose. The payment in each instance was procured by the defendant upon and by reason of the false representation of ownership of the lot referred to and the concealment of the tax delinquencies thereon, and was followed by broken promises to begin construction promptly and absolute refusal and failure to return the monies which had been procured for the specific purpose stated in the construction contract. From these facts the jury could find that the defendant fraudulently obtained the deposits of money without either *244 the ability or the intention to construct the houses involved but with the intent to appropriate the money to his own use, as the record shows he did in fact do.
“Misrepresentation, as an element of larceny by fraud or trick, need not be a misrepresentation as to an existing or past matter and may consist, of a future promise.” 52 Corpus Juris Secundum, 828, Section 32. See, also, 32 American Jurisprudence, 915, Section 29; People v. Hennessey, 201 Cal., 568, 258 P., 49; State v. Scott, 301 Mo., 409, 256 S. W., 745; State v. Ritchie, 196 Iowa, 352, 190 N. W., 943; Georgis v. State, 110 Neb., 352, 193 N. W., 713; and Knight v. State (Florida), 46 So. (2d), 497.
The defense of Leslie T. Healy was based primarily on inability to perform the contract because of labor and material shortages and losses incurred by him in the construction of other buildings. The record discloses that great leeway was granted the defendant in introducing this type of evidence, much of which was probably not relevant to the issue. As a part of the defendant’s case he offered photostatic copies secured from the records of the banks with which he had done business showing by amount only the sum and dates of deposits made therein and the amounts of the checks paid by the bank. These are the so-called ledger sheets referred to in the majority opinion of the Court of Appeals. As a predicate to the introduction of that evidence the defendant testified that some time late in 1947 he had abandoned his office and all his records and turned them over to one Lawrence. He did not know what had become of them and the record fails to disclose what had become of them. An unsuccessful attempt was made to show they had been burned. It seems clear, therefore, that in the absence of such proof the bank records proffered were not the best evidence. The absence of the books of account was not satisfactorily explained and the court properly *245 could have refused to admit the bank records on that ground alone. However, evidence which was tendered after the refusal to admit these bank statements showed that the purpose of their introduction was an attempt to prove that these various deposits were used in the ordinary course of business. To say the least, if they were competent and relevant for that purpose such records would not tend to establish the claimed use of the money. See Watts v. Shewell, 31 Ohio St., 331, wherein this court held that notations made on the' check stubs of a debtor were not competent evidence to prove the issuance of checks made in payment of a debt.
The record discloses that the defendant was allowed to testify fully that he did not make the false representations as charged and that he intended honestly to go ahead and build the houses in accordance with the contracts. He was not prejudiced in any way by the rejection of the photostatic copies of the bank statements for testimony similar to that admitted by the court would have been necessary to explain them. There was no error in the rejection of the proffered bank records and the Court of Appeals was in error in reversing on that ground.
The entry of the Court of Appeals is in part as follows :
* * the judgment of the said Court of Common Pleas of Cuyahoga County, Ohio, is reversed for error of law (1) in failing to instruct jury that ‘an intent to deprive owners of their property,’ was an element of crimes charged, and (2) for error of law in exclusion of evidence proffered by defendant-appellant. No other error appearing in the record and this cause is reversed and remanded to the Court of Common Pleas of Cuyahoga County, Ohio, for new trial.”
This court finding no prejudicial error committed •in the trial of the case in the Court of Common Pleas, *246 the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taet and Hart, JJ., concur.

 By amendment changed to sixty.

 By amendment changed to three.

 By amendment changed to ninety.

 By amendment changed to sixty.

 By amendment changed to three.

 By amendment changed to ninety.