Muse, Spivey & Co. v. Lehman.

R. W. P. MUSE, R. M. SPIVEY AND JOHN A. RANDALL,
    *Partners as Muse, Spivey & Co.*, v. S. LEHMAN.

1. CHATTEL MORTGAGE; *Sufficient Description.* A chattel mortgage of
   growing wheat described the wheat as follows: "35 acres of winter
   wheat, now standing and growing on the southeast quarter of section
   No. 29, township No. 24, of range 1, east, in Harvey county, state of
   Kansas." *Held,* That the mortgage is not void for insufficiency of the
   description of the mortgaged property.

2. CHANGES IN MORTGAGED PROPERTY—*Mortgage Not Void.* A chattel
   mortgage of growing wheat, with the foregoing description of the mort-
   gaged property, was executed June 4, 1877; the debt secured by the
   mortgage was to become due August 15, 1877; the mortgagor was to re-
   tain the possession of the wheat until default; and the mortgage was
   duly filed for record in the office of the register of deeds on June 8, 1877.
   The mortgagor, with the consent of the mortgagee, did in fact retain the
   possession of the wheat, harvested it, stacked it on the premises where
   it was grown, threshed it, weighed it, and found that there were just
   84 bushels, and then put it into a bin on the same premises — in which
   bin 42 bushels of other wheat of the same quality had previously been
   stored. Afterward, the mortgagor, with the consent of the mortgagee,
   sold the wheat on credit, intending that the proceeds of the sale should
   be applied in payment of the mortgage debt. *Held,* That the mortgage
   did not become void by reason of the changes made in the mortgaged
   property, nor by reason of the sale thereof; but the mortgage remained
   valid, and the debt due from the purchaser for the wheat was due and
   owing to the mortgagee, as the mortgagor and mortgagee intended.

3. GARNISHMENT PROCEEDINGS, *Not an Adjudication against Mortgagee.*
   After the sale of said wheat, the purchaser was garnished by a creditor
   of the mortgagor, and in a suit before a justice of the peace, in which
   suit the creditor of the mortgagor was the plaintiff and the mortgagor
   was the defendant, the purchaser appeared and admitted that he owed
   the debt to the mortgagor; but the mortgagee appeared and claimed
   that the debt was coming to him; and the justice of the peace decided
   in favor of the mortgagee, and rendered judgment against the plaintiff
   in that action for costs. The plaintiff then appealed to the district court,
   and in the district court the garnishee again appeared and admitted that
   he owed the debt to the mortgagor. The mortgagee also appeared, and
   asked to show to the court that the debt in fact was coming to him; but
   the court refused to permit him to do so, and made an order that the
   garnishee pay the money into court for the use of the plaintiff in that
   action, which the garnishee did. The garnishee, prior to his first ap-
   pearance before the justice of the peace, had full knowledge of the mort-

gagee's chattel mortgage, and of the claim of the mortgagee for the debt for the wheat; but the garnishee did not at any time disclose these matters to the court, but simply admitted that he owed the debt to the mortgagor. *Held*, That said garnishment proceedings cannot be considered as an adjudication against the mortgagee, but that the mortgagee may still recover from the purchaser of the wheat the amount of the debt due for the wheat.

### *Error from Harvey District Court.*

AT the September Term, 1879, of the district court, plaintiff *Lehman* recovered a judgment against *Muse, Spivey & Co.*, who bring it here for review. The facts appear in *Muse v. Wafer*, 29 Kas. 279, *et seq.*, and in the opinion herein.

*John Reid*, for plaintiffs in error; *J. G. Waters*, of counsel.

*Greene & Shaver*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced before a justice of the peace by S. Lehman, against R. W. P. Muse, R. M. Spivey, and John A. Randall, partners as Muse, Spivey & Co., and after judgment in favor of the plaintiff and against the defendants, the defendants appealed the case to the district court, where another trial was had before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendants for $59.55. To reverse this judgment, the defendants below, who are plaintiffs in error, bring the case to this court. The facts of the case appear to be substantially as follows: On June 4, 1877, William Crow executed to S. Lehman & Co. a chattel mortgage on certain wheat then growing in the field, to secure a debt to become due August 15, 1877, from Crow to Lehman & Co. The wheat was described in the chattel mortgage as follows: "35 acres of winter wheat now standing and growing on the southeast quarter of section No. 29, township No. 24, of range 1, east, in Harvey county, state of Kansas." There was also a stipulation in the mortgage that the mortgagor was to remain in the possession of the wheat until default. This mortgage was filed in the office of the register of deeds of Harvey

county on June 8, 1877, and was afterward kept alive by renewal affidavits. Afterward, Crow, with the consent of S. Lehman & Co., harvested the wheat and stacked it upon the same premises, threshed it, weighed it, and found that there were just 84 bushels, and then put it into a bin on the same premises, in which bin there had previously been stored 42 bushels of other wheat, belonging to Crow, but mortgaged to a man by the name of Luhn. Afterward, and about September 1, 1877, Crow, with the consent of the mortgagees, sold said wheat to Muse, Spivey & Co. Afterward T. F. Cratty commenced an action before a justice of the peace against Crow and one H. H. Andrews for the sum of $75, and served a notice of garnishment upon Muse, Spivey & Co., as the debtors of Crow. About the same time, S. Lehman & Co. demanded of Muse, Spivey & Co. the amount due from them for the wheat mortgaged to S. Lehman & Co. and sold by Crow to them, Muse, Spivey & Co., and informed Muse, Spivey & Co. that they, S. Lehman & Co., claimed this amount, to wit, $56, by virtue of their said chattel mortgage. Afterward Muse, Spivey & Co. appeared before the justice of the peace to answer to the said notice of garnishment. S. Lehman & Co. also appeared, and claimed that the debt which Muse, Spivey & Co. owed for the wheat mortgaged to S. Lehman belonged to them, S. Lehman & Co., and not to Crow or to Crow and Andrews. Muse, Spivey & Co., however, answered that they owed the debt to Crow. The justice found in favor of S. Lehman & Co., and made his order accordingly. The plaintiff Cratty then appealed the case to the district court, and in the district court S. Lehman & Co. again attempted to show that the debt due from Muse, Spivey & Co. for said wheat belonged to them, and not to Crow or to either Crow or Andrews; but the district court refused to hear them, refused to permit them to make any plea, or to introduce any evidence upon the subject; and the court then made an order solely upon the answer of Muse, Spivey & Co., that they should pay the amount of their indebtedness for said wheat into court for the use of the plain-

tiff Cratty. Muse, Spivey & Co., as well as the plaintiff
Cratty, all the time claimed that the debt for the wheat be-
longed to Crow, while Crow and S. Lehman & Co. all the
time claimed that it belonged to Lehman & Co. Cratty had
purchased his claim against Crow and Andrews from Muse,
Spivey & Co. We might here say that previous to this time
the firm of S. Lehman & Co. had been dissolved, and that
the claim of S. Lehman & Co. then really belonged to S.
Lehman; and probably, in several instances where we have
used the firm-name of "S. Lehman & Co." we should merely
have used the single name of "S. Lehman." Neither S.
Lehman nor S. Lehman & Co. were parties to the suit
brought by Cratty against Crow and Andrews; and they had
no connection with the suit in any manner except as above
stated.

The plaintiffs in error, defendants below, claim that the
judgment of the court below should be reversed, for various
reasons.

I. They claim that the mortgage is void because of an in-
sufficient description. Now, we do not think it is void for
such reason. (*Brown v. Holmes,* 13 Kas. 482; *Shaffer v. Pick-
rell,* 22 id. 619; *Mills v. Kansas Lumber Co.,* 26 id. 574, 578.)

II. The plaintiffs in error also claim that the mortgage
became void as to the mortgaged property by reason of the
changes made in such property — that is, they claim that the
mortgage became void with reference to the wheat because the
mortgagor was allowed to retain the possession of the wheat,
to harvest it, to thresh it, to put it into a bin along with
other wheat, and then to sell it. This we think did not ren-
der the mortgage void. (*Duke v. Strickland,* 43 Ind. 494;
*Smith v. Jenks,* 1 Denio, 580; *White v. Brown,* 12 U. C. Q B.
477.) The mortgage was dated and executed June 4, 1877;
the debt secured by it was to become due August 15, 1877;
the mortgagor was to retain possession of the wheat until
default; and the mortgage was duly filed for record, in the
office of the register of deeds, on June 8, 1877. The mort-

gage itself showed specifically where the wheat was at the date of its execution. Everyone knows that the wheat should be harvested before August 15 of any year, and this wheat was in fact harvested before August 15, 1877, and it was stacked on the premises where grown, and it remained in the possession of the mortgagor, according to the stipulations of the mortgage. It was afterward threshed and put into a bin, and still remained in the possession of the mortgagor. There was no intention on the part of any of the parties to commit a fraud by putting this wheat into a bin along with the other wheat, or in afterward selling it, but all was done in the best of faith; besides, all the wheat was of the same quality, and there was just twice as much of this wheat as of the other wheat; and the other wheat was put into the bin first, so that there could not have been much difficulty in separating the two. As to separating the two, see, in addition to the foregoing cases, the case of *Piazzek v. White,* 23 Kas. 621; and *Ryder v. Hathaway,* 38 Mass. 298. The wheat was sold by the mortgagor at the instance of the mortgagees soon after the mortgage debt became due, and the proceeds of the sale of the wheat were to be applied in payment of the mortgage debt. Both the mortgagor and the mortgagees resided in Harvey county, and could easily have been found. From the foregoing facts it will be perceived that the property could easily have been found and its status ascertained at any time before the sale, by proper inquiries. Any person desiring to know any of these facts could have gone to the premises where the wheat was raised, and threshed, and stored, and made inquiries of the mortgagor, or others living there; or he could have gone to the mortgagees, or their agents, and made inquiries concerning the matter. All persons were bound to take notice of S. Lehman & Co.'s chattel mortgage. The authority to sell the wheat, and the sale, were in good faith, and could not have destroyed the mortgagees' right to the proceeds of the sale. (*Frankhouser v. Ellett,* 22 Kas. 127; *Brackett v. Harvey,* decided by

the New York Court of Appeals in 1883, 17 Cent. Law Jour. 112.) This last case cited is a strong case in favor of the power to sell, and to sell on credit.

III. We do not think the garnishment proceedings had in this case can have the effect to bar the plaintiff's present action. Neither the plaintiff nor his firm (S. Lehman & Co.) was a party to the case in which the garnishment proceedings were had. It is true the plaintiff appeared before the justice of the peace in that case, and claimed that the debt for the wheat was due to him, and not to Crow; and the justice of the peace decided in his favor, and taxed the costs of the garnishment proceedings to Cratty, the plaintiff in that case. But in the district court there was no litigation concerning the matter. The district court utterly refused to hear or receive anything from Lehman, the plaintiff in this case; and Muse, Spivey & Co. then appeared and admitted that they owed the debt to Crow, and did not state any of the circumstances upon which the debt was founded. They did not inform the court with respect to any of the facts upon which Lehman claimed that the debt was coming to him. The court then ordered that Muse, Spivey & Co. pay the amount of the debt into court, for the use of the plaintiff in that case, Cratty; and afterward they did pay the same into court, as ordered by the court. Now Muse, Spivey & Co. are not attaching creditors, or innocent purchasers of mortgaged goods for a valuable consideration, for at the time they allowed or procured the order of the district court to be made against them, requiring them to pay the amount of the debt into court for the benefit of Cratty, they had full and complete knowledge of Lehman's claim. Besides, they were bound to take notice of S. Lehman & Co.'s mortgage, and bound to know when they purchased the wheat that they were purchasing the property mortgaged to S. Lehman & Co. Orders made in garnishment proceedings can seldom be considered as final adjudications. (*Board of Education v. Scoville*, 13 Kas. 18; *Fitch v. Fire Ins. Co.*, 23 id. 366.) And the

order made by the district court in the present proceedings in the case of Cratty v. Crow and Andrews can certainly not be considered as a final adjudication as against the present plaintiff, Lehman. (*Borden v. Noble,* 26 Kas. 599.) In justices' courts interpleas in garnishment proceedings are not allowed; but if they were, the order of the justice in the present case was in favor of Lehman; and in the district court Lehman was not allowed to file any interplea or to give any evidence with respect to his claim, or even to make any appearance with respect thereto; and of course the order in the district court requiring Muse, Spivey & Co. to pay the debt which they owed for the wheat into court, for the use of Cratty, cannot be considered as an adjudication against the present plaintiff, Lehman. (See *Borden v. Noble,* ante.) The order of the district court, and the payment of the money into court by Muse, Spivey & Co., would certainly relieve them from ever afterward paying the same amount to Crow; but it would not relieve them from paying the debt to Lehman, provided they owed the same to him, and not to Crow.

The judgment of the court below will be affirmed.

All the Justices concurring.