Acme Feeds, Inc., Appellant, v. Victor Daniel, Defendant, A. C. Baker et al., Copartners as Baker Heyne Company, Garnishees, Old Second National Bank of Aurora, Illinois, Appellees.

Gen. No. 41,569.

Heard in the second division of this court for the first district at the December term, 1940. Opinion filed December 30, 1941.

L. A. WESCOTT, of Chicago, for appellant; A. D. McMAHON, of Chicago, of counsel.

SEARS, O'BRIEN & STREIT, of Aurora, for certain appellee; BARNABAS F. SEARS, of Aurora, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Victor Daniel, a tenant farmer in Kane county, Illinois, in pursuance of a common practice employed in rural districts of this country, made a loan of some $3,800 at the Old Second National Bank of Aurora for the purpose, *inter alia,* of acquiring and fattening 91 head of hogs, to be later sold when market conditions became favorable, and gave the bank his note for the amount involved, secured by chattel mortgage on the hogs, both dated March 1, 1938, maturing eight months thereafter. The mortgage was duly recorded in Kane county, pursuant to statutory provision. Previously, Daniel had made a bill of sale and conditional sales agreement on the same hogs to secure payment of feed which plaintiff, Acme Feeds, Inc., sold to him, but both of these instruments were unrecorded.

June 23, 1938, after learning from the records at the courthouse that the bank had a mortgage on Daniel's chattels, Acme Feeds advised the bank in writing that Daniel had, on January 31, 1938, executed a bill of sale on the same hogs covered by the mortgage, claiming that the bill of sale was superior to the chattel mortgage, at the same time notifying the bank that the amount due for feed would have to be paid in full out of the first hogs sold, and that if any of the money was retained by the bank, Acme Feeds would look to it for payment. Replying to this letter June 30, 1938, the bank said that it had taken the matter up with its counsel, that there was no prior mortgage of record, that it considered the recorded chattel mortgage a first and superior lien on the hogs in question, and that the bills of sale given to secure Acme Feeds' account were subordinate to the bank's lien.

July 5, 1938, Daniel went to the bank and requested permission to sell 42 of the 91 hogs covered by the mortgage, on condition that he would remit the proceeds to the bank to be applied on the mortgage in-

debtedness. This permission was granted by the bank's officers and pursuant thereto Daniel, on July 6, 1938, hauled 42 of the hogs to the Union Stock Yards in Chicago, to be sold by Baker Heyne & Co., commission merchants. Before selling the hogs Daniel told both Baker and Heyne that the bank had a mortgage on the hogs and that the proceeds of the sale were to go to the bank. The hogs were sold, but for some reason not appearing of record remittance was not made that day by the commission firm. Two or three days later Daniel received a letter from Baker and Heyne, dated July 7, 1938, saying that about three o'clock that afternoon they had received a telephone call from Acme Feeds advising them that Daniel was indebted to it and it held a mortgage against Daniel's hogs. They told Daniel that "we will hold bill and proceeds until further notice."

July 9, 1938,. the commission firm received notice from the bank that it claimed the entire proceeds of the sale under its mortgage and demanded the money. By reason of the respective claims made upon it, the commission firm retained the fund. Thereafter, July 29, 1938, Acme Feeds caused a garnishment writ to be served upon Baker Heyne & Co. The Old Second National Bank filed an intervening petition, claiming the proceeds of the sale and Acme Feeds filed its answer thereto. A hearing by the court, without a jury, resulted in finding and judgment that the intervening petitioner have and recover from the garnishee the sum of $450.32. Acme Feeds has prosecuted this appeal to reverse that order.

It is not here contended that the unrecorded bill of sale and conditional sales agreement afforded plaintiff any priority over the bank's recorded chattel mortgage, but it is urged that when the mortgaged chattels were sold with only the verbal consent of the mortgagee, they became released from the lien of the mortgage and that the proceeds from the sale there-

upon became subject to garnishment by plaintiff, a judgment creditor. Plaintiff's counsel argue that consent to the sale should have been in writing, but no supporting authority is cited. In *Anderson v. South Chicago Brewing Co.,* 173 Ill. 213, oral consent by the president of a corporation to the sale of property by the owner, on which the corporation held a chattel mortgage, was held to be valid. (Citing Jones on Chattel Mortgages, sec. 458; *Gage v. Whittier,* 17 N. H. 312; *Pratt v. Maynard,* 116 Mass. 388.)

The fundamental question involved in this proceeding is whether the sale of the mortgaged chattels, with the bank's consent and upon the condition that the proceeds of the sale would be applied in payment of the mortgage debt, had the effect of releasing the chattels from the lien of the mortgage. If that result was attained by sale of the hogs, as plaintiff contends, its right as a creditor to attach the proceeds of the sale by garnishment would logically follow. On the other hand, if the sale under the circumstances disclosed by the undisputed evidence did not affect the bank's lien but merely caused it to attach to the proceeds, then plaintiff acquired no right paramount to that of the bank by virtue of its recorded chattel mortgage.

Plaintiff's position is predicated upon the erroneous assumption that the hogs were sold in the "usual course of business," and its counsel rely on several Illinois decisions where special circumstances such as unconditional assent to a sale, fraud, or waiver existed. In this proceeding plaintiff cannot claim that it was misled or deceived because of the ostensible possession of the hogs by the mortgagor, since it was fully aware of the bank's recorded mortgage and of the circumstances attending Daniel's transaction with the bank. It is clear from the evidence that the bank did not intend to waive any of its rights, but granted Daniel permission to sell the hogs upon the express stipulation that its mortgage lien would attach to the proceeds

of the sale. It is a fundamental rule of law that waiver must be predicated upon knowledge of an existing right and an intention to relinquish it. (*Perin v. Parker,* 126 Ill. 201.) The evidence adduced upon the hearing clearly indicates that the bank was fully aware of its rights under the mortgage and had no intention whatever of relinquishing them when Daniel sought and obtained permission to sell these hogs.

Although the courts of our State have not had occasion to pass upon the precise question, we find decisions in other States amply supporting the bank's position. 36 A. L. R., beginning at page 1379, contains a general discussion of the right of the chattel mortgagee in respect of proceeds of sale of mortgaged property by the mortgagor, and, at page 1384, it is said to be the general rule that where the consent of the mortgagee to the sale of the mortgaged chattels by the mortgagor is conditioned upon the latter's agreement to apply the proceeds of the sale upon the mortgage debt, the mortgagee does not lose his right to the proceeds by such consent, and that "a sale in good faith by the mortgagor at the instance of the mortgagee, who acted in good faith, the proceeds of the sale to be applied in payment of the mortgage debt, does not destroy the mortgagee's right to the proceeds." (Citing *Muse v. Lehman,* 30 Kan. 514, 1 Pac. 804.) In the case at bar the good faith of the mortgagor, as well as that of the bank, cannot be questioned.

In *Scurry v. Quaker Oats Co.,* 201 Iowa 1171, 208 N. W. 860, plaintiff, the mortgagee of some corn, consented to the sale thereof by the mortgagor when market conditions became favorable, upon condition that the proceeds from the sale be delivered to plaintiff. After the sale and delivery of the corn by the mortgagor, garnishment proceedings were instituted by a judgment creditor and the money was thereafter paid into court. Upon trial it was held that the mort-

gagee's consent operated to release the lien of the mortgage and judgment was entered in favor of the creditor. The Supreme Court, reversing the judgment, said: "Since the appellee, by virtue of its garnishment, acquired only the right of the mortgagor, the controversy must be viewed as one arising between the mortgagee and the mortgagor to the proceeds of the sale in the hands of the purchaser. There is here no question of the intervening rights of an innocent third party. As between the mortgagor and the mortgagee, the former acquired no right to the proceeds of the corn. The undisputed testimony is that the agreement between them was that the corn was to be sold by the mortgagor and the money brought to the mortgagee. The sale was consented to by the mortgagee only on the condition that the proceeds should come to him."

*J. I. Case Threshing Mach. Co. v. Rominger*, 77 Colo. 595, 238 Pac. 63, likewise involved the sale of mortgaged property by the mortgagor with the mortgagee's consent, and upon condition that the proceeds of the sale were to be applied to payment of the mortgaged debt. The question involved was whether the mortgagee should prevail over a judgment creditor who had garnisheed the proceeds of the sale before remittance was made to the mortgagee. In discussing that question the court said: "The question is whether the bank had a valid claim to the proceeds of the sale in Schmidt's hands at the time of the garnishment. We think it had. Plaintiff in error says the lien was lost by the mortgagee's consent to a sale by the mortgagor, and cites *Moore v. Jacobucci*, 70 Colo. 171, 197 P. 1015. It is true that, if the mortgagee lets the mortgagor sell for his own account, he loses the lien on both the goods and their proceeds. The reason is that such a proceeding is fraudulent, as explained in *Wilson v. Voight*, 9 Colo. 614, 13 P. 726; but it is there clearly indicated that, if the proceeds are to go in payment of

the mortgage debt, the rule is otherwise. What objection can there be to a sale by the mortgagor and mortgagee together for the purpose of paying the mortgage debt? We can see none, and that is what the agreed statement shows that they did.''

Another decision precisely in point is *McIntyre v. Hauser*, 131 Cal. 11, 63 Pac. 69. There the mortgagee consented to the sale of some mortgaged cattle upon condition that the proceeds be paid to him. Before the purchase price was paid a judgment creditor of the mortgagor garnisheed the money in the hands of the purchaser, who, regardless of the garnishment, paid the money to the mortgagee. Thereupon the judgment creditor sued to recover the amount from the purchaser. The court held that the creditor could not recover from the garnishee.

A similar conclusion was reached in *Great Northern State Bank v. Ryan*, 292 Fed. 10. In that case one Schmid, who was engaged in the dairy business, gave mortgages on cows to the plaintiff bank as security for loans made. Ultimately Schmid's dairy business was sold with the bank's consent. The chattels involved included some of the cows covered by the bank's chattel mortgage. The sale was made with the understanding that the proceeds from the sale of the cows were to be remitted to the bank and applied on payment of the mortgage debt. Schmid went into bankruptcy and the trustee brought suit against the bank claiming the fund. The circuit court of appeals for the eighth circuit, in reversing the judgment of the trial court, pointed out that the transaction between the bank and Schmid constituted an agreement that the bank as mortgagee should receive the money for the particular property covered by the mortgage, that there was no fraud in the transaction, and that, therefore, no creditor had acquired any lien on the chattels.

The rule to be deducted from the foregoing cases and others cited in 36 A. L. R., beginning on p. 1384,

is that where the mortgagee consents to the sale of chattels by the mortgagor on condition that the proceeds of the sale will apply on the mortgage debt, both parties acting in good faith, the lien of the mortgage is not discharged and the mortgagee does not lose his right to the proceeds by such consent. In *J. I. Case Threshing Mach. Co. v. Rominger, supra,* the court pertinently inquired, ''What objection can there be to a sale by the mortgagor and mortgagee together for the purpose of paying the mortgage debt?'', and answered the inquiry by saying, ''We can see none, and that is what the agreed statement shows that they did.'' In the case at bar Daniel, the mortgagor, advised the commission firm that these hogs were subject to a mortgage and that it was to remit the proceeds to the bank. Acme Feeds knew of the existence of the mortgage, and even though it claimed right to the proceeds as a judgment creditor, it was not through lack of knowledge of the circumstances attending the sale, but because of a misconception of the law upon which its claim was predicated. Both Daniel and the bank acted in good faith and in pursuance of a common practice, and we think the bank was clearly entitled to the proceeds of the sale. The court so held and therefore its judgment should be and is affirmed.

*Judgment affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.