CARL SMITH, APPELLEE, V. JOHN BROOKS, APPELLANT,
THOMAS COUNTY BANK, INTERVENER-APPELLANT.

47 N. W. 2d 389

Filed March 30, 1951.   No. 32848.

*Finlayson, McKie & Kuhns,* for appellants.

*Gross, Welch, Vinardi & Kauffman,* for appellee.

*Kennedy, Holland, DeLacy & Svoboda,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Carl Smith, instituted this action in the district court for Douglas County against John Brooks, defendant, for breach of a written contract by the terms of which the defendant agreed to sell to the plaintiff certain steers. The plaintiff prayed for damages. When the action was filed an order of attachment was entered and garnishment summons was served on the Johnson Commission Company, a copartnership in Omaha, the cattle having been consigned to it by the defendant to be sold on the market. The commission company filed an answer admitting it received the cattle and sold them on the market, and stated that pursuant to summons in garnishment it had withheld $3,050 out of the proceeds of the sale subject to the order of the court and caused the balance of the proceeds to be forwarded to the Thomas County National Bank for the account of John Brooks; alleged that the said bank had served notice on this answering garnishee that it claimed to be entitled to the sum of $3,050 by reason of a chattel mortgage and that the balance of the indebtedness thereon exceeded that amount; further alleged that for the protection of this answering garnishee an order should be entered setting a time within which the bank might intervene in this action and present to the court its claim to said fund; and prayed that upon compliance with

the orders as might be entered by the court it be discharged as garnishee.

The Thomas County National Bank filed a petition in intervention wherein it claimed the proceeds from the sale of the cattle by virtue of a chattel mortgage held by it covering the cattle in question, executed and recorded as required by the laws of Kansas.

The plaintiff filed an answer to the petition in intervention in the form of a general denial, and a denial of priority of the mortgage as pleaded in the petition in intervention; alleged that the intervener consented to the removal of the cattle from the State of Kansas and that the same be sold in the State of Nebraska; and prayed dismissal of the petition in intervention.

Hearing was had to the court. The court entered judgment that the garnishee held the sum of $3,050 as the property of the defendant. It directed the amount be paid to the clerk of the court to be held pending further order of the court, and upon so doing the garnishee be discharged. It dismissed the petition in intervention.

The intervener bank's motion for new trial was overruled, and the bank appeals.

For convenience we will hereafter refer to Carl Smith as the plaintiff, to John Brooks as the defendant, to the Thomas County National Bank as the bank, to the Johnson Commission Company, a copartnership, as the commission company, and to the United States National Bank of Omaha as the Omaha bank.

The record discloses that on August 8, 1949, the plaintiff and defendant entered into a written agreement whereby the defendant agreed to sell and deliver to the plaintiff 180 or 181 head of steers on August 11, 1949. One thousand dollars was paid down and payment received. This agreement was signed by the defendant. The plaintiff informed the defendant in writing that he would receive the cattle for loading on the Thursday following. The cattle were not delivered.

The bank, on December 13, 1948, loaned the defendant $25,000 evidenced by a promissory note in the same amount executed and delivered on the same date, due June 13, 1949, renewed June 17, 1949. This note was secured by a chattel mortgage dated December 13, 1948, which was recorded May 7, 1949. This chattel mortgage covered the same steers mentioned in the contract between the plaintiff and defendant. The mortgage provided further that "any future advances of money made while this chattel mortgage is in force and effect by the mortgagee or assignee to the mortgagor, not exceeding in the aggregate the sum of $35,000.00, shall be secured by this mortgage equally to the same extent and with the same priority as the amount originally advanced on the security of this mortgage."

Between the dates of December 13, 1948, and the due date of the promissory note, the bank advanced to the defendant certain money, taking notes of the defendant with no additional security other than the chattel mortgage heretofore referred to. On August 15, 1949, the defendant was indebted to the bank in the amount of $37,000.

W. D. Ferguson, president of the bank, testified that he and the defendant had a conversation with reference to shipping the cattle to the Omaha market for sale, and it was agreed that on completion of the sale the proceeds derived therefrom were to be credited to the account of the bank in payment of the mortgage indebtedness owing by the defendant to the bank, through the bank's correspondent bank in Omaha, the United States National Bank. On August 19, 1949, the bank received notice of credit from the Omaha bank, indicating that the commission company had passed to the credit of the bank the sum of $29,216.92. Prior to receiving the credit, defendant's account with the bank was overdrawn $108.

On August 20, 1949, the defendant contacted the bank

with reference to making arrangements to take care of the indebtedness owing by him to it. This was done by applying $26,500 on the indebtedness, leaving a balance in the account of the defendant of approximately $2,500, and a balance owing the bank of $12,000.

The bank over a period of 15 years had loaned money to the defendant, a farmer and cattle raiser, so that he could purchase cattle and feed to fatten them, then sell them and pay off the mortgage or mortgages wherein the cattle were given as security with the proceeds of the sales.

Defendant testified that he instructed the commission company to send the proceeds of the sale of the cattle directly to the bank to be applied on the mortgage. Defendant knew that the bank had received the proceeds of the sale, exclusive of the amount attached and garnished, and that the money was credited to his account. For the balance of the indebtedness, after the arrangement for payment of the same was made, he gave the bank a note in the amount of $12,000.

The bank had no notice or knowledge of the agreement between the defendant and the plaintiff whereby defendant agreed to sell the steers to plaintiff, until defendant informed the bank that the commission company, by garnishee process, withheld the amount of $3,050 from the proceeds of the sale.

Plaintiff testified that he had no knowledge of the mortgage on the steers in question until he was called by counsel in Omaha, and suit was brought in his behalf against defendant.

The plaintiff is a resident of Kansas, and at times resides in Denver, Colorado. He is engaged in farming and the selling of livestock. The defendant is a resident of Kansas, and is engaged in farming and the selling of livestock. The Thomas County National Bank of Colby, Kansas, is a banking corporation doing business in the State of Kansas. The chattel mortgage in question was recorded in the State of Kansas.

The intervener bank assigns as error the following: (1) The trial court erred in finding that the proceeds of the sale of the livestock in the hands of the garnishee were the property of the defendant. (2) The court erred in finding that the rights of the plaintiff as a garnishing creditor were superior to the rights of the intervener bank as a chattel mortgagee. (3) The trial court erred in dismissing the petition in intervention and in failing to direct the garnishee to pay the amount of $3,050 to the intervener.

The plaintiff contends that the burden of proof is on the intervener bank to prove by a preponderance of the evidence the validity of the mortgage and its recordation, and intervener's title to the fund in question. This contention is based on the following: The petition in intervention alleged that the chattel mortgage in question was duly recorded in Sherman County, Kansas, while the evidence shows it was recorded in Thomas County, Kansas; further, that there is no evidence as to the defendant's residence either in Sherman County or Thomas County, Kansas. The defendant testified he resided in Brewster, Kansas. In addition, the intervener did not seek to amend its petition so as to allege the residence of the defendant in Thomas County, and the recording of the mortgage there.

Reference is made to section 58-301, General Statutes of Kansas, 1935, on recordation of chattel mortgages, also section 36-301, R. S. 1943, of the Nebraska statutes on the same subject, as the same might apply with reference to this assignment of error.

Section 25-12,101, R. R. S. 1943, provides: "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States."

Section 25-12,104, R. R. S. 1943, provides: "Any party may also present to the trial court any admissible evidence of such laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask

that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise." The foregoing cited sections of the statute are with reference to the Uniform Judicial Notice of Foreign Law Act.

In the case of Prudential Ins. Co. v. Shumaker, 178 Md. 189, 12 A. 2d 618, in interpreting a like section as section 25-12,104, R. R. S. 1943, contained in the Maryland statutes, the court said: "* * * in order for a litigant to invoke the benefits of such foreign law it required * * * that he give reasonable notice in the pleadings or otherwise to the adverse party of his intention so to do, such notice being a prerequisite to offering proof of such foreign law or asking the court to take judicial notice thereof. In the present case, the question of what constitutes reasonable notice under the statute does not arise, for the reason that the record is entirely devoid of anything tending to show that the privileges accorded by the statute were invoked by appellant, and this we cannot assume. It follows from what we have said that the rights of the parties in the present case must be determined by the law of Maryland." See, also, The Maccabees v. Lipp, 182 Md. 190, 34 A. 2d 424; Fardy v. Mayerstein, 221 Ind. 339, 47 N. E. 2d 315.

In interpreting the Uniform Judicial Notice of Foreign Law Act, this court held that in the absence of the common law or statutes of any other jurisdiction in the United States being pleaded and presented we will presume the common law or statutes of such other jurisdiction to be the same as ours. See Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627. It is apparent that the law applicable in the instant case is the law of Nebraska.

No objection was made to the offer of proof of the recording of the mortgage in Thomas County. No motion was made to dismiss on the ground that the proof varied from the pleadings, or on the ground that there was failure to establish residence of the defendant in the county where the mortgage was recorded. It appears

from the record that the matter was not presented to the trial court during the progress of the trial or on the motion for new trial. On this phase of the case the following authorities are applicable.

Where a party relies upon a variance between the pleadings and the proof to defeat a recovery, that question should be raised at some time during the progress of the trial, and unless it is so raised and suggested to the trial court, it will not be considered on appeal in this court. See Spencer v. Wilson, 74 Neb. 459, 104 N. W. 930. See, also, Westing v. Chicago, B. & Q. R. R. Co., 87 Neb. 655, 127 N. W. 1076.

The proof of the recording of the mortgage and the residence of the defendant in the county where the mortgage was recorded was sufficient. The mortgagee's burden of proving that the mortgage was properly recorded, or the burden of proving, by one who asserts it, that the recordation was invalid, may be sustained by any competent evidence suffcient to establish the necessary facts. See Green Finance Co. v. Becker, 151 Neb. 479, 37 N. W. 2d 794.

In the instant case the plaintiff's claim to the proceeds of the sale rests on his status as a garnishing creditor. As such, he steps into defendant's position, and if the intervener bank is entitled to claim the proceeds of the sale as against the defendant, it is equally entitled to claim the proceeds of the sale as against the plaintiff.

It is a fundamental rule that the claim of a judgment creditor against the garnishee in a garnishment proceeding can rise no higher than that of the defendant as the principal debtor. See, Cahn, Wampold & Co. v. Carpless, 61 Neb. 512, 85 N. W. 538; Royal Tire Service v. Geo. W. Bell Co., 139 Neb. 238, 297 N. W. 88; Scurry v. Quaker Oats Co., 201 Iowa 1171, 208 N. W. 860. This rule also applies to a garnishing creditor.

It is the intervener bank's contention that where the facts show it had a valid, recorded chattel mortgage cov-

ering the steers in question as security for indebtedness owing by the defendant (mortgagor) to the bank, and by agreement between the bank and the mortgagor the steers were to be consigned to a commission company in Omaha, sold on the market, the commission company to be instructed to remit the proceeds of the sale to the mortgagee to be applied on the mortgage debt, under this state of facts the following rule is applicable: "It has been quite generally held that where the consent of the mortgagee to the sale of the mortgaged chattels by the mortgagor is conditioned upon the latter's agreement to apply the proceeds of the sale upon the mortgage debt, the mortgagee does not lose his right to the proceeds by such consent." Annotation, 36 A. L. R. 1384.

This rule was based on the holding in Farmers State Bank v. Anderson, 112 Neb. 413, 199 N. W. 728, 36 A. L. R. 1374. In that case the Farmers State Bank of Petersburg sued the Newman Grove State Bank to recover the proceeds of a sale of 20 head of steers upon which the plaintiff held a chattel mortgage securing a note of one Tom Anderson. The Newman Grove State Bank also held a note and mortgage of Tom Anderson. An arrangement was made between the plaintiff and Anderson that Anderson would ship the cattle evidenced by plaintiff's mortgage to Omaha to be sold, and apply the proceeds upon the note of the plaintiff. The net proceeds of the sale were deposited by the commission company in the Stock Yards National Bank of South Omaha to the credit of the Newman Grove State Bank. Thereafter Anderson gave his check on the Newman Grove State Bank payable to the plaintiff for the proceeds of the sale. The check was presented to the Newman Grove State Bank and payment was refused for the reason that the latter bank had applied the amount on a note Anderson owed it. The Newman Grove State Bank contended that the mortgagee, by consenting to the sale by the mortgagor, waived its mortgage lien. The court said: "This is undoubtedly good law so far

as any claim of the mortgagee against the chattels is concerned, as was distinctly held in Seymour v. Standard Live Stock Commission Co., 110 Neb. 185, but there is no such question here—the mortgagor had the right to sell and title passed to the purchaser—the present dispute concerns only the proceeds of the sale." The court held: "When a sale by the mortgagor of mortgaged chattels is made with the consent of the mortgagee, the former agreeing to apply the proceeds upon the mortgage debt, the mortgagor becomes the agent of the mortgagee with reference to such proceeds, which may be recovered by the mortgagee from any person having possession thereof not having a lawful claim thereto under or through the mortgagor."

In the cited case the proceeds of the sale actually came into possession of the mortgagor. In the instant case the defendant was at no time in possession of the proceeds of the sale.

In Scurry v. Quaker Oats Co., *supra,* the plaintiff held a chattel mortgage on certain corn. By arrangement between the mortgagor and the mortgagee the corn was sold to the Quaker Oats Company. Prior to a remittance of the proceeds being made by the Quaker Oats Company, a judgment creditor of the mortgagor garnished the company. The court said that the judgment creditor, by virtue of the garnishment, acquired only the right of the mortgagor. The sale was consented to by the mortgagee only on the condition that the proceeds of the same should come to him. The mortgagor was but the agent of the mortgagee to sell the corn and bring the money to him. If the mortgagor had in fact violated his agreement, that fact would have given neither him nor a garnishing creditor of his any right superior to that of the mortgagee. See, also, Acme Feeds, Inc. v. Daniel, 312 Ill. App. 330, 38 N. E. 2d 530; Muse, Spivey & Co. v. Lehman, 30 Kan. 514, 1 P. 804; J. I. Case Threshing Machine Co. v. Rominger, 77 Colo. 595, 238 P. 63.

The intervener bank contends that the lien on a chattel mortgage executed in another state is not lost when the property is brought into the State of Nebraska with the consent of the mortgagee and consigned to a commission house to sell the mortgaged property on the market and apply the proceeds of the sale to the mortgage indebtedness.

Nebraska does not have a statute providing for the refiling of chattel mortgages in this state where property is brought into the state encumbered with a valid chattel mortgage. Since the garnishing creditor was a resident of Kansas and in the state in which he transacted business with the defendant when the contract between him and the defendant was executed, this situation indicates clearly that he had constructive notice of the mortgage.

"A mortgagee is entitled to the proceeds of a sale of the mortgaged property by the mortgagor when the sale is made upon the condition, agreement, or understanding that the proceeds shall be paid to the mortgagee or his representative. This right of the mortgagee is superior to the claims of the mortgagor, the mortgagor's creditors, a purchaser, or other persons whose claims were inferior to the mortgage lien prior to the sale." 14 C. J. S., Chattel Mortgages, § 266, p. 891.

In Handley v. Harris, 48 Kan. 606, 29 P. 1145, 17 L. R. A. 703, 30 Am. S. R. 322, the court held: "Where a mortgagor removes property from another state into this state, which has been incumbered by a mortgage duly recorded and valid under the laws of the former state, such removal does not invalidate the recording of such mortgage, nor necessitate the recording of it again in the county in this state to which the mortgagor has removed with the property. The constructive notice imparted by the recording of such mortgage, by the law of comity between the different states, is not confined to the county or state where the mortgage was executed and the propery then was, but covers the property

wherever it is removed." See, also, Shapard v. Hynes, 104 F. 449, 52 L. R. A. 675; Mercantile Acceptance Co. v. Frank, 203 Cal. 483, 265 P. 190.

The plaintiff relies on the case of Pennington County Bank v. Bauman, 87 Neb. 25, 126 N. W. 654. The facts appear in a previous case (81 Neb. 782, 116 N. W. 669) to which we make reference. One Sigman, a resident of Nebraska, became indebted to a bank in Fremont. Later he moved to Pennington County, South Dakota, where he negotiated a loan with the plaintiff secured by a mortgage on certain livestock he owned. Thereafter, with the consent of the plaintiff, he loaded the livestock in South Dakota and consigned the same to himself at Long Island, New York. The stock was attached in transit in the railroad yards at Fremont by the Fremont bank. The court in the later opinion said: "* * * we are of opinion that where a mortgagee, residing in another state where his mortgage is recorded, permits the mortgagor to bring the property into this state, a bona fide attaching creditor of the mortgagor, without notice, will acquire a lien thereon by virtue of his attachment sued out in this jurisdiction superior to that of the mortgagee." The court cited with approval Snyder v. Yates, 112 Tenn. 309, 79 S. W. 796, 64 L. R. A. 353, 105 Am. S. R. 941, which held as before stated.

In Newsum v. Hoffman, 124 Tenn. 369, 137 S. W. 490, the court disapproved the holding in Snyder v. Yates, *supra,* and adopted the doctrine of comity, recognized in most of the states in the Union. There was no discussion in Snyder v. Yates, *supra,* between removal of mortgaged property with and without the consent of the mortgagee. It was assumed in that case that the property had been removed to Tennessee with the consent of the mortgagee, and it was held that under such facts the case was correctly decided. The holding in Newsum v. Hoffman, *supra,* was followed in Hamblen Motor Co. v. Miller & Harle, 150 Tenn. 602, 266 S. W. 99.

Subsequent to the holding in Newsum v. Hoffman,

*supra,* this court, in the case of Farmers & Merchants State Bank v. Sutherlin, 93 Neb. 707, 141 N. W. 827, 46 L. R. A. N. S. 95, Ann. Cas. 1914B 1250, cited by plaintiff, recognized a distinction where the mortgaged property was brought into this state from another state with the consent of the mortgagee and without the consent of the mortgagee, and did not follow the reasoning in Snyder v. Yates, *supra,* or Pennington County Bank v. Bauman, *supra,* but did follow Newsum v. Hoffman, *supra.* recognizing the law of comity and the conditions under which comity would be applied by this state.

In Bankers Finance Corp. v. Locke & Massey Motor Co., 170 Tenn. 28, 91 S. W. 2d 297, the court said: "The rule in this state; therefore, now is that the priority of a chattel mortgage validly executed and legally registered in another state, according to the laws of that state wherein the propery was and the mortgagor resided, will be recognized and enforced in this state against the claims of attaching creditors, or innocent purchasers here, unless the mortgagee has consented to the removal of the property into this state, or having knowledge of its removal here, has failed to assert rights under the mortgage within a reasonable time. * * * It is only when the property is kept or used here, that it is likely to become a basis of credit, ensnaring to residents here, who are without any notice, or means of notice of the state of its title."

It will be observed that the later Tennessee decisions repudiated the holding in Snyder v. Yates, *supra,* upon which the decision in Pennington County Bank v. Bauman, *supra,* was based. It is obvious that the holding in the case of Pennington County Bank v. Bauman, *supra,* must be overruled insofar as it conflicts with this opinion.

The plaintiff relies on Robbins v. Bostian, 138 F. 2d 622, wherein the seller sold a rock crusher under a conditional sales contract in Arkansas where such contracts need not be recorded. The buyer resided in Missouri.

The crusher was moved into Nebraska for use on a construction job. The buyer instituted voluntary bankruptcy proceedings. The seller did not record the conditional sales contract in Nebraska, as provided for by law. The controversy was between the seller and the trustee in bankruptcy. There was no evidence that the seller consented to the removal of the rock crusher to Nebraska, however, he learned of such fact five months prior to the bankruptcy proceedings and did nothing to comply with the Nebraska statutes applying to conditional sales contracts. The court said: "The trustee primarily represents the creditors of the bankrupt and although the contract was valid in Arkansas even as against subsequent creditors of the vendee, and was good in Nebraska as between the parties, it may nevertheless be invalid as to creditors becoming such in Nebraska while the property was there located and being operated without actual or constructive notice of appellant's (seller's) claim. Whether or not such creditors acquired rights above those of the vendee must be determined by the law of the situs of the property—in this case, the law of Nebraska." The opinion makes clear the exception is applicable only for the benefit of persons who deal with the purchaser or the property subsequent to its removal.

Other cases cited by the plaintiff have been considered and are readily distinguishable from the instant case.

It is the plaintiff's contention that the intervener waived any rights it may have had to assert with reference to the priority of its chattel mortgage against the garnishing creditor for the reason that the intervener relied upon the personal credit of the defendant and not upon the right of its lien on the proceeds of the sale. The proceeds of the sale of the cattle, less the amount tied up by garnishment process, were credited to the intervener bank by the Omaha bank, but the intervener did not retain that credit, and in turn credited the full amount thereof to the checking account of the defendant

in its bank. When the defendant came into the bank to discuss his indebtedness, the intervener did not require an application of the full amount received from the sale of the cattle. It permitted the defendant to retain a credit of $2,500, which plaintiff states to be $2,700, and to pay only $26,500 of the indebtedness, even though the intervener knew that $3,050 was held by virtue of garnishee process in Omaha and the defendant owed the bank $12,000.

We are not in accord with the plaintiff's contention in such respect for the reason that the lien of the mortgage terminated when the sale proceeds were received by the bank. The acts of the parties could not then constitute a waiver. It is obvious that these transactions did not negative the existence of the agreement or contract. The testimony of Ferguson is that even though the proceeds were credited to the defendant's account on the books of the bank, it still had control of the proceeds of the sale and could have applied the same against the mortgage debt. He further testified that before the bank would honor the defendant's checks there would have to be a new arrangement made. A new arrangement was made subsequent to the receipt of the sale proceeds by the bank. The new arrangement was a normal banking arrangement. We conclude that the intervener did not waive its lien as contended for by the plaintiff.

For the reasons given in this opinion the judgment of the trial court is reversed with directions to the trial court to enter judgment in favor of the intervener and to direct the clerk of the district court to pay to the intervener the amount of $3,050 paid into the office of the clerk of the district court by the garnishee.

REVERSED WITH DIRECTIONS.