LaMUNION, Etc., Garnishee of GROOMES, et al. *v.* SOUTHERN STATES WESTMINSTER CO-OPERATIVE, INC., et al.

[No. 299, September Term, 1963.]

568

*Decided May 5, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Ralph G. Hoffman,* with whom were *Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for the appellant.

*Stanford Hoff,* with whom were *Sponseller & Hoff* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

The principal question presented on this appeal is whether a lienholder or attaching creditors are entitled to the proceeds from a sale of dairy cattle, farm equipment and other chattels sold at a public sale under a written agreement between the owners and an auctioneeer and sales manager who was also the lienholder and an unsecured creditor.

V. Kenneth and Ella Mae Groomes (the Groomes') in August of 1960, executed a chattel mortgage and a conditional sales contract (collectively herein referred to as "lien" or "liens") on their cattle, farm equipment and other chattels to Guy A. LaMunion (LaMunion, lienholder or auctioneer) for the sum of $11,850, payable in thirty monthly installments of $495 each. LaMunion was a dealer in dairy cattle and farm equipment as well as an auctioneer. In July of 1961, the Groomes', who were also indebted to the Maryland Cooperative Milk Producers (Maryland Cooperative), arranged to make monthly payments of $75 on account of such indebtedness out of their milk checks. Thereafter, whenever the aggregate monthly payments they were required to make left the Groomes' without sufficient means to operate their farm, LaMunion would assist them by paying their cattle feed, electric and telephone bills.

Finally, due to financial difficulties, the farm of the Groomes' was sold at a mortgage foreclosure sale. The payments on the chattel liens being also in default, the Groomes', in March of 1962, entered into a written agreement with LaMunion under which he was to sell all the livestock and other personal property on the farm at public sale. LaMunion was to furnish the auctioneer and sale clerks, receive a commission of 10% and collect the proceeds of the sale. After deducting the sale expenses and commissions, LaMunion was to apply the net proceeds to the chattel lien indebtedness and other obligations due him by the Groomes'. The balance, over and above $8,250, was to be paid to the owners. The advertisement stated that the sale was being held by the Groomes' and others as owners because their farm had been sold and they were discontinuing dairying. LaMunion was named in the advertisement as "auctioneer and sales manager."

The sale was held on April 10, 1962, and grossed $7,320. At the conclusion of the sale, writs of attachment, issued the day before by Maryland Cooperative and Southern States Westminster Cooperative (Southern States) on confessed judgments entered against the Groomes', were laid in the hands of the auctioneer and sales manager as garnishee. As of the day of sale, the sum of $4,856 was due under the chattel liens, and the Groomes' also owed LaMunion $1,859.05 for money he had advanced them to pay current bills and a chattel lien payment of $406.02 he had made to his assignee (the Dairy Credit Company) on behalf of the Groomes' in October of 1961. LaMunion used the proceeds of sale to pay the amount due him as lienholder [1] and applied the balance to the sale costs and the unsecured obligations due him by the Groomes'.

As garnishee, LaMunion filed a plea of *nulla bona* and another pleading to the effect that the net proceeds of the sale did not pay in full the debts due him by the Groomes'. But the lower court ruled that the sums due the lienholder under the chattel liens and on open account were subordinate to the sums due Maryland Cooperative and Southern States and entered judgments in their favor against LaMunion.

The specific questions raised on appeal are: (i) whether or not the lienholder, who entered into an agreement with the owners to sell the chattels for them and apply the proceeds of sale to the indebtedness due under the liens, loses his priority to the proceeds to attaching judgment creditors of the owners; and (ii) whether or not the lienholder as an unsecured creditor, who was also directed to pay himself the indebtedness due by the owners to him on an open account, may claim priority to the balance of the proceeds over the attaching judgment creditors.

(i)

The point raised here is one of first impression in this Court. The rule adopted by some courts is that a chattel mortgagee, who unconditionally consents to or acquiesces in a sale of the

---

1. Dairy Credit Company had reassigned the chattel mortgage to LaMunion before the date of the sale.

mortgaged chattels by the mortgagor and the receipt by him of the proceeds of sale (if and when followed by a sale pursuant thereto), thereby waives the lien of the mortgage, and that other creditors of the mortgagor may, generally speaking, attach the proceeds of sale before they are applied in satisfaction of the mortgage indebtedness. See 10 Am. Jur., *Chattel Mortgages*, §§ 192, 194; Annotation, 97 A.L.R. 646, and cases therein cited. These courts have applied this rule on the theory that the consent of the mortgagee to allow the mortgagor to sell the mortgaged chattels and apply the proceeds of sale to the mortgage debt amounts to a substitution of the mortgagor's promise for the security afforded by the mortgage, see *Southern Wisconsin Acceptance Co. v. Paull*, 213 N. W. 317 (Wis. 1927), and, accordingly, have generally held that the proceeds of sale were payable to the attaching creditor rather than the mortgagee. *Maier v. Freeman*, 44 Pac. 357 (Cal. 1896); *Carr v. Brawley*, 125 Pac. 1131 (Okla. 1912); *Calkins v. Stevens*, 193 N. W. 733 (N.D. 1923); *East Central Fruit Growers v. Zuritsky*, 30 A. 2d 133 (Pa. 1943).

Other courts, however, under similar circumstances, have refused to adopt this rule on the ground that a waiver must be predicated on knowledge of an existing right and an intention to relinquish it. These courts have held that where the sale of mortgaged chattels by the mortgagor was conditioned on his agreement to apply the proceeds of sale to the mortgage debt, there was no waiver of the lien because the mortgagee by his entry into the agreement demonstrated that he was fully aware of his rights and had no intention of relinquishing them. *Acme Feeds Inc. v. Daniel*, 38 N. E. 2d 530 (Ill. App. 1941). A sale made in good faith pursuant to such an agreement should not destroy the right of the mortgagee to the proceeds. *Muse v. Lehman*, 1 Pac. 804 (Kan. 1883); *J.I. Case Threshing Machine Co. v. Rominger*, 238 Pac. 63 (Colo. 1925); Annotation, 36 A.L.R. 1379, 1384. See also *McIntyre v. Hauser*, 63 Pac. 69 (Cal. 1900), where the Court, in reaching a like result, held that such an agreement was in effect an equitable assignment to the mortgagee of the money derived from the sale; and *Farmers' State Bank of Petersburg v. Anderson*, 199 N. W. 728 (Neb. 1924), in which it was said that the proceeds of a sale under

such an agreement were held by the mortgagor as agent of the mortgagee for the purpose of applying them on the mortgage debt. And see 2 Jones, *Chattel Mortgages and Conditional Sales* (6th ed.), § 464.

Although there is some conflict in the cases as to whether or not the rights of the mortgagee to the proceeds of a sale made by the mortgagor are subordinated to those of an attaching creditor, there seems to be no conflict as to the priority of the mortgagee where, by the terms of the agreement, the proceeds of sale are to be received by a third person and applied to the mortgage debt. *Hoyt v. Clemans,* 149 N. W. 442 (Iowa 1914) ; *Minneapolis Threshing Machine Co. v. Calhoun,* 159 N. W. 127 (S.D. 1916) ; *Wilson v. Geiss,* 190 N. W. 61 (Minn. 1922) ; *Farmers' State Bank v. Kavanaugh,* 224 Pac. 525 (Okla. 1924). The theory is that the third person receives the proceeds, not as an agent of the mortgagor, but as a trustee for the mortgagee and that as soon as the proceeds reach the hands of the third person they become subject to the trust. The third person is under no obligation to pay them over to the mortgagor, nor can the latter collect them from him, and the attaching creditor, having acquired no greater rights than the mortgagor, could not recover the proceeds from the third person-garnishee. Annotation, 36 A.L.R. 1379, 1390.

In the case at bar, where the property was sold by LaMunion in his capacity as auctioneer or sales manager, and not as the holder of the chattel mortgage, his position as an auctioneer hardly differs from that of any other third person who could have been selected to receive the proceeds of sale as trustee for the mortgagee. The sale was not conducted by the Groomes', nor were the proceeds thereof ever in their hands or under their control. We conclude therefore that the lienholder did not lose his right to the proceeds of the sale to the extent of the indebtedness due under the chattel liens.

(ii)

As herein stated the attaching creditors could not attach so much of the net proceeds of sale as were required to satisfy the indebtedness due under the chattel liens, but a different ques-

tion is posed as to the right of the attaching creditors to recover the balance of the proceeds of sale from the garnishee.

LaMunion contends that he should be allowed to apply the balance of the proceeds of sale against the $1,859.05 due him for money he advanced to the Groomes' to pay current bills aggregating $1,453.03 and an overdue payment of $406.02 he made for them on account of the chattel liens then held by the assignee of the mortgage. We agree that LaMunion is entitled to retain the sum of $406.02 since it constituted a part of the chattel lien indebtedness, but we do not agree that he is entitled to the balance of the sale proceeds.

In *Farley v. Colver,* 113 Md. 379, 77 Atl. 589 (1910), we said that garnishment cannot change a pre-existing *bona fide* contract between the debtor and the garnishee or prevent the garnishee from performing a valid pre-existing contract with a third person. In the instant case, the agreement between the Groomes' and LaMunion was not made with the latter as mortgagee or creditor, but rather as auctioneer. In essence the agreement was an order directing LaMunion as a third person to pay such of the sale proceeds as remained, after paying the chattel lien indebtedness, to himself as creditor. Clearly the agreement was not a valid assignment of the remaining balance to LaMunion, and for this reason the subsequent attachments of Maryland Cooperative and Southern States take priority over that part of the indebtedness the Groomes' owed LaMunion as an unsecured creditor. See Hodge & McLane, *Law of Attachment in Maryland,* §§ 148-156. It follows that the balance of the proceeds of sale remaining, after the payment of the chattel lien indebtedness of $5,262.02 ($4,856.00 plus $406.-02), belongs to Maryland Cooperative or Southern States, or both, according to their preferred status, if any, as attaching creditors.

On remand, the lower court, after determining the net proceeds of sale (by deducting the sales expenses and commissions from the gross proceeds of $7,320) and deducting therefrom the chattel lien indebtedness of $5,262.02, should reenter a judgment in favor of Maryland Cooperative or Southern States,

or both, as the case may be, against the garnishee, for such balance of the net proceeds as shall remain.

> *Judgment reversed; and case remanded for such further proceedings as are required by this opinion in order to reenter judgment against the garnishee in an amount to be ascertained upon remand; the appellees to pay the costs.*